STATE OF MISSOURI, TO USE OF G. B. ALLEN, ADMINISTRA-
TOR, Respondent, v. JOSEPH O'NEILL ET AL., Appellants.

4   221
35  222
4   221
67  202
4   221
0151m 291

June 19, 1877.

1. In an action against A., a corporation, and B. and C., where the sheriff's
return to the writ shows personal service of a copy of the writ and petition
upon B., as president of A., and personal service of copies of the writ upon
B. and C., *held*, that such return shows a sufficient service, and was conclu-
sive that B. was president of A. at the time of the service.

2. A default will not be set aside on the ground that one who is served with a
writ of summons believed it to be a subpœna, and failed to read it.

3. In an action on an attachment bond, where the property has been released
on defendant's bond, given during the pendency of the action, damages may
be recovered for losses and expenses incurred in defending the attachment,
as well before as after the dissolution thereof.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

FARISH & GRIFFIN, for appellants, cited: Wag. Stat.
1007, sec. 7; *The State to use* v. *Beldsmeier*, 56 Mo. 226;
*Roe* v. *Thomas*, 19 Mo. 613.

SAMUEL REBER, with T. T. GANTT, for respondent, cited:
*The State to use* v. *Beldsmeier*, 56 Mo. 226; *Thomas* v.
*Warden*, 17 Mo. 435; *The State* v. *Moore*, 61 Mo. 276.

LEWIS, P. J., delivered the opinion of the court.

The Central Savings-Bank sued the plaintiff's intestate,
Eugene Shine, who resided in Ireland, by attachment, the
defendants, O'Neill and Nicholson, being sureties on the stat-
utory bond. Shine appeared and gave bond for the release
of the attached property, effecting a dissolution of the attach-
ment. Upon a trial on the merits, judgment was rendered
against Shine, who appealed to the Supreme Court, where
the judgment was reversed and the cause remanded. The
suit was thereupon dismissed by the plaintiff. Shine having
died, his administrator instituted this suit on the attachment
bond, against the principal and sureties. The plaintiff herein
dismissed as to the Central Savings-Bank, and obtained

judgment against the other defendants for the penal sum in the bond, with execution for $2,500, the damages assessed.

The defendants allege, for error, that there was no sufficient service of the process. The sheriff's return was as follows:

"Executed this writ in St. Louis County, on the 16th day of May, 1874, by delivering a copy of the writ and petition, as furnished by the clerk, to Joseph O'Neill, president of the Central Savings-Bank, and by delivering copies of the writ, as furnished by the clerk, to each, Joseph O'Neil and David Nicholson.

"PHILIP C. TAYLOR, *Sheriff*.

"By CON. S. HICKEY, *Deputy*."

This return shows, on its face, an exact compliance with the law. Wag. Stat. 294, sec. 26; p. 1007, sec. 7. It is alleged, however, that O'Neill was not, in fact, president of the Central Savings-Bank at the time of the service, and that it was for that reason only that suit was dismissed as to the corporation. But the allegation is not sustained by any thing in the record. We cannot look beyond the return, which is conclusive upon the parties. In *Hollowell* v. *Page*, 24 Mo. 590, the defendants attempted to controvert the sheriff's return by proving that a copy of the writ was not left, as stated, with any white member of the family above the age of fifteen years, or at the usual place of abode of the party summoned. It was held that the parties were concluded by the statements in the return. These included, of course, the averment that the person with whom the copy was left was above the age of fifteen years, and was a member of the defendant's family. There seems no good reason why the sheriff's averment that O'Neill was president of the corporation should not be equally conclusive, even if an effort were made to show the contrary. It is enough, however, for the present purposes that the return shows a sufficient service.

The defendant Nicholson, in support of a motion to set

aside the default entered against him, filed an affidavit set-
ting forth, in effect, that when the summons was handed to
him he supposed it was a subpœna, and appeared in court on
the day therein mentioned, but heard nothing of the case;
that he " did not read the paper further than to see that he
was required to appear in court on a certain day therein
named, and did not know that it was a writ in this case."
The court properly refused to sustain the motion.    The
statute requires that a copy of the writ be delivered to the
defendant.   It does not add, as a condition of effectual ser-
vice, that he shall read it, or that he shall not suppose it to
be a subpœna, or yet that he shall know it to be a writ.   It
provides for the structure of the document in language
which any one who will read must surely understand.   If
the person most directly interested in its contents will yet
remain ignorant of them when a copy has been officially
placed in his hands, he cannot urge even a moral claim to
judicial guardianship, unless on the ground that he is incapa-
ble of managing his own affairs.   The law provides none,
however, for such manifest negligence.

The defendants objected, without avail, to all the testi-
mony offered for the purpose of showing the losses and
expenses incurred by plaintiff's intestate in defending the
attachment suit after the dissolution of the attachment.
They also asked for an instruction, which was refused, to the
effect that plaintiff was not entitled to recover any damages
for such losses or expenses.

The condition of the attachment bond required that the
principal therein should " pay all damages and costs that
might accrue to any defendant or any garnishee by reason
of the attachment, or any process or proceeding *in the suit*."
These words, in themselves, have but one meaning, and
that is plainly at variance with the defendants' interpreta-
tion.   We find nothing in the circumstances, or in the sup-
posable purposes of the attachment law, to authorize a de-
parture from the literal terms of the condition.   If, after
the dissolution of an attachment, a trial on the merits should

result in favor of the plaintiff, there might be some reason in limiting his liability on the bond to damages growing out of the attachment process. In all that followed he would be pursuing his right, and for this he would be answerable to nobody. But when the whole proceeding fails, it proves that he was in the wrong from first to last. ⁻ The law has always discouraged the liberal use of the attachment process, by annexing certain risks and liabilities to that summary proceeding. Formerly, in this State, the failure of the attachment, on the plea in abatement, was the failure of the action. But if the attachment was sustained, and the plaintiff failed on the merits, the damages recoverable on the bond were uniformly held applicable to the entire suit. *The State* v. *Thomas,* 19 Mo. 613. When, in 1865, a change was made (Wag. Stat. 189, sec. 42), permitting the plaintiff to proceed on the merits, notwithstanding the dissolution of the attachment, this was a relaxation which lessened his risk to that extent, giving him an additional chance for ultimate success if his claim against the defendant was meritorious. But it by no means superadded the immunity which defendants here claim. Referring to this modification, Judge Sherwood, in an exhaustive opinion, reviewing the whole history of attachment laws in Missouri, says : " That section does not in any way limit or avoid the conditions of the bond given for the prosecution of the suit, and those conditions will be deemed broken if, from any cause, the suit is not prosecuted without delay and with effect, whether any plea in abatement be filed in the cause or not." * * * " By the very terms of our statute, however, the failure of the plaintiff to successfully prosecute his action will *per se* subject him to liability therefor on his bond, if we are to give to the language employed in that instrument its usual effect and significance ; so that this subject of the plaintiff's liability in this regard is, after all, narrowed down to the simple question, Does the bond mean what it says?" *The State* v. *Beldsmeier,* 56 Mo. 229.

Defendants assume a distinction arising from the fact that

the attachment was dissolved. But that can have no possible bearing, unless to strengthen the case against them. This must be obvious from what has already been said. The mode of dissolution subjected the plaintiff's intestate to the necessity of giving bond, and procuring satisfactory security thereon, in order to release his property; thus incurring a new liability for himself and his surety, which was kept alive until the determination of the suit.

We find no error in the record, and must affirm the judgment. Judge HAYDEN concurs; Judge BAKEWELL, having been of counsel below, not sitting.