## THOMPSON *et al.* v. WEBBER *et al.*

1. ATTACHMENT BOND—ACTION ON — SURETIES — LIABILITY — STRICTLY CONSTRUED.

   In an action for damages on an undertaking given upon the issuance of an attachment, the instrument must be strictly construed as to the liability of the sureties, and they cannot be held beyond the letter of the contract.

2. SAME—MEASURE OF DAMAGES.

   In such action the damages recoverable refer solely to the injury done to the property taken, and not to any collateral or consequential damages resulting to the owner by the trespass.

3 SAME.

   Loss of trade, destruction of credit, and failure of business prospects are not elements of damage recoverable in such action.

4. PLEADING—SPECIAL DAMAGE—MUST BE ALLEGED.

   Special damages, as distinguished from general damages, are those that are the natural but not the necessary result of the act complained of; and cannot be proved unless specially alleged in the complaint.

5. SAME.

   The value of the use of the store building closed by attachment proceedings and containing the goods attached, cannot be proved in such action, where not specially set out in the complaint.

Filed October 4, 1886.

Appeal from the district court of Lake county.

The facts are sufficiently stated in the opinion of the court.

*F. K. Soper*, for appellants.

In an action on an attachment bond the rule restricting the recovery to the approximate damages, will exclude any recovery of damages for injuries to credit and business. See 1st Sutherland on Damages, 60; 10 Ia. 337–8, B. Mon. 51; 1 Cal. 410; 56 Ill. 68; Drake on Attachment, 6th Ed. p. 175; Lowenetine v. Monroe, 7 N. W. Rep. 406.

Special damages must be especially alleged, and one cannot in an action of this kind recover damages for the loss of the use of property in which the attached property was kept, without alleging specially and proving himself entitled to recover. 1st Sedgwick, damages 763–5; Spencer v. St. Paul & S. C. R'y Co., 21 Minn. 362; Wampach v. St. Paul & S. C. R'y Co., 21 Minn. 364; Wallace v. Finberg, 46 Tex. 35; Drake on Attach-

ment, 180; 3d Sutherland, damages, 383; Dickinson v. Boyle, 17 Pick. 78; McTavish v. Carroll, 13 Md. 428; Sherwin v. Datch, 16 Ill. 283; Hallock v. Belcher, 42 Barb. 199; Armstrong v. Perry, 5 Wend. 539.

*Kennedy Bros.*, for respondents.

Sutherland on Damages, Sec. 6, page 53, states the law as follows: "The actual damages have generally been stated to be the injury to the plaintiff by being deprived of the use of his property and its loss, destruction or deterioration, together with the costs and expenses incurred by him in the defense of the suit." Petit v. Mercer, 8 B. Mon. 51; Campbell v. Chamberlain, 10 Ia. 337; Frankell v. Stearn, 44 Cal. 168; Bruce v. Coleman, 1 Handy (Ohio) 515; Alexander v. Jackoby, 23 Ohio 358; Drake on Attachment, §§ 175, 177; 2 Sutherland on Damages, 59.

TRIPP, C. J.   This is an action brought by the plaintiffs, against the defendants, principal and sureties, upon an undertaking in attachment. Two of the defendants, Webber and Breecher, as the firm of G. Webber & Co., had some time prior thereto brought an action against the plaintiffs, as the firm of K. Thompson & Bros., to recover for goods sold and delivered, and had caused the attachment to issue against the property of K. Thompson & Bros.; and the defendants in this action, Webber and Breecher, to obtain such attachment, had signed the said attachment undertaking as principals, and Fitts and Cameron, the other defendants herein, had signed said undertaking as sureties. The attachment having been set aside by the court as irregular and improvidently issued, this action was instituted upon the undertaking against the principals and sureties to recover damages for the wrongful seizure and detention.

The complaint sets out the commencement of the prior action, the issuing of the attachment, the undertaking *in extenso*, the setting aside of the attachment, and the allegation of damages sustained by the wrongful seizure, which allegation of damages is in the following words: "And thereby the business of the plaintiffs was entirely

broken up, and the goods attached became unmarketable and valuless, and these plaintiffs' credit thereby became greatly impaired, and these plaintiffs were obliged to spend and did spend, large sums of money and much time in procuring the dissolution of said attachment, and were obliged to pay large sums of money to counsel as fees in procuring the dissolution of said warrant of attachment.'' These were all the allegations of damage contained in the complaint. The defendants admitted the suing out of the attachment, and the execution of the undertaking, and the levy of the attachment, but denied every other allegation of the complaint, and specifically denied the damages alleged in the complaint by reason of such attachment. A large number of exceptions were taken to the admission of evidence and to the charge of the judge, and a large number of errors are assigned for the consideration of this court, but I do not deem it necessary or propose to go over the record, and answer the points made by counsel in their briefs, except as to the errors deemed by the court to be fatal to the case, and upon which it is reversed.

Upon the trial of the cause, Ole T. Thompson one of the plaintiffs, being a witness upon the stand in his own behalf, was asked by the plaintiffs' counsel the following question: ''Question. What effect, if any, did this attachment have upon your business?'' This question was objected to by defendants' counsel as incompetent, and as furnishing no criterion for the proper measure of damages. The court overruled the objection, and the witness was permitted to answer: ''Answer. Well, our business has been entirely ruined. We have not done one-twentieth of the business we could have done if it hadn't been for the attachment.'' And this question and answer were followed by other testimony of a similar character. The admission of this testimony was clearly error, and of a character very likely to prejudice the interests of the defendants with the jury.

This is an action brought against the defendants upon an undertaking express in its terms, by which the obligators undertake to pay to the plaintiffs ''all costs that may be awarded

to them, and all damages that they may sustain by reason of the attachment." As to the sureties, at least, the undertaking must receive a strict construction. They cannot be held beyond the letter of the contract. They have contracted to pay these plaintiffs "all damages that they may sustain by reason of the attachment." The words of themselves are broad enough to include every conceivable damage that might accrue to plaintiffs by reason of the attachment, but they must have a reasonable construction. We need not, however, examine the decisions of the courts for a construction of this language. Our code, following the common law as to the damages flowing from the breach of such an obligation, has set at rest any argument that might be made to the contrary; and, says Sections 1947, 1948 Civil Code, (Old Ed.) page 486:

"For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

"No damages can be recovered for a breach of contract which are clearly ascertainable in both their nature and origin."

Under the terms of this undertaking the plaintiffs were entitled to such damages only as would compensate them for the detriment proximately caused by the attachment, or such as would naturally result therefrom. Would the breaking up and ruin of one's business be the proximate and natural result of attaching property? It is safe to say no well considered case has so held. On the other hand, the decisions and text writers lay down the contrary rule.

Says Mr. Sutherland: "In an action upon an attachment bond, the rules restricting the recovering of the natural and proximate damages will exclude any claim of damages for injuries to credit or business." 1 Suth. Dam. 98; State v. Thomas, 19 Mo. 613. See, also, Lowenstine v. Monroe, 55 Ia. 82; S. C. 7 N. W. Rep. 406; 8 B. Mon. 51, 160.

In a well considered case in the supreme court of the

United States, in which that court sustains an injunction against an officer restraining him from closing up the place of business of the plaintiff on the ground that an action at law would be inadequate to compensate for loss of credit and the breaking up of his business, Judge DAVIS, in delivering the opinion of the court, says: "If the appellants made the levy and prosecuted it in good faith, and it should turn out, in an action at law instituted by Sutherland for the tresspass, that the merchandise belonged exclusively to him, it is well settled that the measure af damages, if the property were not sold could not extend beyond the injury done to it, or, if sold, to the value of it when taken, with interest. Any harsher rule would interfere to prevent the assertion of rights honestly entertained, and which should be judicially investigated and settled. ·Legal compensation refers solely to the injury done to the property taken, and not to any collateral or consequential damages resulting to the owner by the trespass.' Loss of trade, destruction of credit, and failure of business prospects are collateral or consequential damages which it is claimed would result from the trespass, but for which compensation cannot be awarded in a trial at law." Watson v. Sutherland, 5 Wall. 78. See, also, Pacific Ins. Co. v. Conard, 1 Bald. 142.

It is true that this claim for damages is alleged in the complaint; but, no matter however specifically pleaded, if the claim was an improper one, and the plaintiff was not entitled to damages, for such detriment in a court of law, it follows that the testimony was incompetent, and should have been excluded.

This same witness, while still testifying in his own behalf, was, further on. interrogated as follows by plaintiffs' counsel: "Question. State whether or not they were in possession of your store building during the time they held it under this warrant of attachment? Answer. They were. Q. What was the reasonable value of the store building during the time they held it under this warrant of attachment?" To which question the defendants objected that it was special damage, and should be specially pleaded. The objection was overruled and the witness answered: "A. Thirty dollars per month."

The objection of the defendants' counsel seems to have been well taken. There was no allegation of the complaint to apprise the defendants that such damages were claimed, and the proposition is elementary that only those damages that naturally and necessarily the result from the act complained of can be proved under the general allegation of damages. Special damages, as distinguished from general, are those that are the natural, but not the necessary, result of the act complained of, and can never be proved unless alleged in the complaint. 1 Suth. Dam. 763. Therefore, although these damages may have been proper to have been proved under special allegations of the complaint,—in other words, although the detriment afforded in evidence may have been the natural and proximate result of the defendants. tortious act,—yet it was not a necessary result of such act, and should have been specially pleaded; and, not having been so pleaded, the admission of the testimony was error; and upon these two questions only, and without passing upon the other alleged errors, the judgment must be reversed, and a new trial ordered.

All the justices concurring.