THE STATE, TO USE OF ROE, Plaintiff in Error, *vs.* THOMAS, Defendant in Error.

1. In an action upon an attachment bond given under our statute, the plaintiff can only recover the natural and proximate damages resulting from the attachment. Damages for injuries to credit and business can only be recovered in an action on the case for *maliciously* suing out an attachment.

*Error to St. Louis Court of Common Pleas.*

On the 12th of September, 1849, Samuel Gunn sued out of the St. Louis Circuit Court an attachment against Bernard F. Roe, a resident of Iowa, for three hundred and nineteen dollars, and executed an attachment bond in the usual form, with Jacob P. Thomas as security. The writ of attachment was levied upon a lot of merchandise, worth from one to two thousand dollars, belonging to Roe, purchased by him of merchants in St. Louis, for Roe's store in Iowa, and then being on board a steamboat at the levee in St. Louis. Roe was then in Iowa. A forthcoming bond was executed by the friends of Roe, and the goods were sent forward on the same boat, without losing the trip. The attachment cause was tried on its merits, before a jury, March 5th, 1852, and a verdict found for defendant, Roe, for seventy dollars, on an offset, upon which judgment was rendered, which remains unreversed.

On the 10th of August, 1852, this suit was commenced on the attachment bond, in the St. Louis Court of Common Pleas, against Gunn and Thomas, and a trial had at the September term, 1853, of said court. There was no service on Gunn, and the suit, as to him, was dismissed.

Upon the trial of this cause before a jury, the plaintiff gave in evidence the attachment bond and the transcript of the record of the attachment suit, and then proved that Roe had sustained direct damages and costs to the amount of three hundred and fifty-eight dollars and fourteen cents, under the following heads : For costs of taking depositions and other taxable costs in the case of Gunn against Roe ; for Roe's attorney's fees, in said suit ; for Roe's hotel and traveling bills, while attending to said suit ; for Roe's expenses in taking witnesses to the place of taking their depositions, and for their board while attending ; for Roe's direct damages for the detention of his goods and expenses incurred by him in proving their release ; for the value of his time and services, while attending said suit, and interest on money expended by him in said suit. Plaintiff then offered to prove by competent witnesses that, by reason of the proceedings in said attachment suit, of Gunn *vs.* Roe, said Roe was greatly injured in his credit and standing in his business, which was that of a country retail merchant in the state of Iowa ; that said Roe was in good credit and doing a good business up to the time of said attachment being sued out ; that in consequence of said attachment proceedings, those who had heretofore credited him for goods refused to continue to credit him ; that he was thereby wholly ruined in his credit and compelled to suspend business, and that by reason of such damage to his credit, said Roe sustained damage and loss, to an amount exceeding the penalty of the bond, $640. Defendant's counsel objected to the introduction of this testimony, on the ground that it was irrelevant, and that the defendant could not be held liable in law on his said bond, for loss and damages sustained by Roe in consequence of loss of credit, growing out of said attachment proceedings. The court sustained the objection, and the evidence was excluded, to which plaintiff excepted. This was all the evidence in the case. The court instructed the jury that plaintiff was not entitled to recover for any loss of credit which Roe may have sustained in consequence of said attachment pro-

State, to use of Roe, *v.* Thomas.

ceedings. The jury gave a verdict for the plaintiff for three hundred and fifty-eight dollars and fourteen cents, and the plaintiff moved for a new trial, which was refused.

Proper exceptions were taken at the various stages of the proceedings, a bill of exceptions signed, and plaintiff prosecutes this writ of error.

*Hill, Grover* and *Hill,* for plaintiff in error. This case involves the proper construction of the fourth section of the first article of the attachment act, (R. C. 1845,) relating to the condition of attachment bonds. The condition of the bond could not well be expressed in broader terms ; *to pay all damages that may accrue, by reason of the attachment or any process or proceedings,* &c. It was evidently the design of the legislature to secure full and complete indemnity for *all* damages that might accrue to the defendant, directly traceable to the proceedings in the attachment suit, to the extent of the penalty of the bond ; and to that extent, to hold both principal and surety liable for the same character of damages that might be recovered from the principal, in an ordinary action on the case. The record shows that the attachment against Roe was maliciously sued out ; but while malice aggravates the damages, its existence is not necessary to entitle the plaintiff to the full measure of damages claimed. Loss of credit arising from an attachment is the legitimate subject of damages. *Donnel* v. *Jones,* 13 Ala. 490. 17 Ala. 689. The last case was a suit upon an *attachment bond.* As illustrating the rule of damages, the following authorities were cited : 18 Vermont, 620. 8 Pick. 356. Peake's N. P. cases, 270. 9 Wend. 325. 17 Wend. 71. 23 Wend. 425.

*F. A. Dick,* for defendant in error, argued the following points : 1. Damages resulting from a loss of credit and from the non-realization of anticipated profits are too speculative and remote to be taken into consideration. Besides, so far as the profits from sales are concerned, the record in this case shows that the goods were not detained by the attachment. 2. Admitting that such damages could be recovered in an action

on the case against the plaintiff in the attachment suit, they cannot be recovered in an action against the security in the bond. If the legislature had intended that the bond should cover such damages, they would not have limited the amount of the penalty to double the amount sued for, as that amount would, in most cases, be inadequate, if such damages were to be recovered. Upon the whole case, the following authorities are cited : Sedgwick on Damages, p. 69. 21 Wend. 144. 1 Gallison, 315, 324-5. 8 B. Monroe, 51. Ib. 160. 1 Howard (U. S.) 28. 3 Wheaton, 546, 560. The cases cited by the plaintiff from Vermont were actions *on the case*, and do not sustain the principle contended for. The other cases cited by him are met by the cases cited for the defendant.

SCOTT, Judge, delivered the opinion of the court.

This is an action against the surety in the attachment bond. The condition of the bond is, that Samuel Gunn, (the principal,) should prosecute his action without delay, and with effect, refund all sums of money that might be adjudged to be refunded to the defendant, or found to have been received by the plaintiff and not justly due to him, and pay all damages that might accrue to any defendant or garnishee, by reason of the attachment or any process or proceeding in the suit, or by reason of any judgment or process thereon.

The only question presented by the record is, whether the plaintiff can show that his character and reputation, as a merchant, were injured by reason of the attachment, and that he was compelled to suspend his business in consequence of it.

1. Nothing can be clearer, both on principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. 10 Mo. Rep. 566. If the design of the legislature, in prescribing the condition of the bond for an attachment, was to cover such damages as are claimed by the plaintiff, there would have been no necessity for the various specifications which are found in

the condition. If all possible damages, proximate and remote, were designed to be covered by the clause giving damages that might accrue by reason of the attachment, why afterwards insert a clause allowing damages sustained by reason of any judgment or process thereon? This distribution, or rather specification of the results of an attachment, and the giving damages accruing by reason thereof, shows what damages were in the contemplation of the general assembly, when they allowed for all that might accrue to any defendant, by reason of the attachment. It is worthy of observation, that the defendant and garnishee are mentioned together, as equally likely to suffer from the effects of the writ. If it was the intent to give the defendant damages for the loss, he would not thus have been connected with the garnishee who could sustain no such damage. The law says the clerk shall judge of the sufficiency of the penalty. If injuries to the credit were designed to be covered by the penalty, how could the clerk estimate the sum necessary to compensate them? By what means would he be enabled to ascertain the amount that would cover such damages? In this very case, it is said that the damages are greater than the penalty of the bond, and so they would be in every case. The clerk does not know that any such damages will accrue, and cannot inform himself thereof. Even if he was assured that damages would accrue, he could not possibly ascertain their extent. In requiring the clerk to judge of the sufficiency of the bond, the law must have designed that he should require a penalty that would cover the natural and proximate consequences arising from attaching property equal in value to the debt sued for, which would be known to the clerk. He would have no other data in fixing the penalty.

The question here is, not whether the plaintiff is entitled to damages for a malicious attachment against his goods, whereby his credit was injured and his business suspended, but whether the terms of the bond were designed to cover such damages. For a wrongful attachment, a plaintiff may bring his action on the case, and recover damages for the injury

sought to be compensated in this action. For a malicious arrest, for a malicious suing out execution, or any other malicious abuse of process, the injured party has his remedy in a special action on the case. The same resort is open to the plaintiff in this suit. The case of *Donnel* v. *Jones*, 17 Ala. 689, in which the court held that, in an action for a wrongful attachment, injuries done to the credit of the plaintiff by reason thereof, might be compensated in damages, was not on an attachment bond, as was supposed, but was an action on the case.

The statute was not designed to give damages beyond the natural and proximate damages resulting from the suing out of an attachment. For injuries to his credit and business, the plaintiff is only entitled to damages, where the motives of the defendant have been vicious; where his proceedings have been malicious and vexatious. To allow damages for loss of credit to business, in an action on the bond, would be to make the plaintiff responsible in one form of action, when, if it had been brought in another form, he might have interposed a defense which would have protected him. In a suit on the bond, the defense of a probable cause would be unavailing. However upright and innocent his motives, he would be mulcted in the same manner and to the same extent, as though his conduct had been swayed by the blackest malice. *Offut* v. *Edwards*, 9 Rob. Lou. 92.

In the case of *Pettit & Owen* v. *Mercer*, 8 B. Mon., the action was on a bond for an attachment, the condition of which was, to pay all damages and costs that might be sustained by the defendant in the suit, by reason of the order for the attachment. There, the court held that the plaintiff was confined in his recovery to the costs and expenses incurred by him, and such damages as he may have sustained by a deprivation of the use of his property or any injury thereto, or loss or destruction thereof, consequent upon the suing out of the attachment; that he had no right to recover for injuries to his credit, or for the derangement of his business; that, for such injuries, he had his redress in an action on the case for the wrongful process.

The court which tried this cause, seems to have adopted the foregoing rule as the measure of the damages to be recovered in an action on an attachment bond. We see no reason to depart from it.

The other judges concurring, the judgment will be affirmed.