————o————

STATE OF MISSOURI to use of WM. J. CLIFFORD, Plaintiff in Error, *vs.* HENRY W. BELDSMEIER, *et al.*, Defendants in Error.

1. *Attachment—Plaintiff's bond may be sued on without plea in abatement—Damages for detention of money by garnishee.*—Under the statute of 1865, (Wagn. Stat., p. 189, § 42,) defendant in a suit by attachment, in case of judgment in his favor on the merits, may sue on the plaintiff's attachment bond, without having entered his plea in abatement. (State to use of Roe vs. Thomas, 19 Mo., 613.)

In such suit he may recover damages growing out of the detention by garnishment of money due him, not exceeding of course the legal rate of interest.

*Error to St. Louis Circuit Court.*

*M. Dwight Collier, with Hitchcock, Lubke & Player*, for Appellants.

*E. C. Kehr*, for Respondent.

SHERWOOD, Judge, delivered the opinion of the court.

Henry W. Beldsmeier brought suit by attachment against William J. Clifford, on a contract respecting lumber. The ground alleged in the affidavit was non-residence. The usual bond was given by Beldsmeier with his co-defendant Schloemann as surety. Clifford being in fact a non-resident of the State, could not successfully plead in abatement and therefore pleaded to the merits, and in this was successful. Upon the termination of that suit he thereupon in the name of the State instituted the present one against Beldsmeier and his surety on the attachment bond. At the trial evidence was adduced to the effect above stated, and that A. H. Grantlite who, at the time the suit by attachment was commenced, owed Clifford a balance of about $1,300, in consequence of having been garnished in that suit, refused to pay the money to Clifford until the latter would give a bond of indemnity in the sum of $4,000; that by this means Clifford lost the interest on the money for some two months and was put to an expense of $3.50 to have such a bond prepared and stamped in order to procure the money; that the loss of the interest computed at ten per cent. amounted to $13; that the expenses of Clifford's trip from his home in Wisconsin to St. Louis, to attend the trial in the attachment suit, was $41.90; hotel bills $17.50; six days of lost time at $3.00 per day, $18.00; cost of taking depositions $16.00; attorney's fees in defending that action $100. The court on this state of facts refused declarations of law asserting Clifford's right of recovery, and gave judgment for the defendants, and this was affirmed in the General Term. Material changes have taken place in our law concerning attachments since the year 1835, the giving of a bond as a condition precedent to the issuance of a writ was not then requisite. After the return of the writ it was in the discretion of the court to require the plaintiff to give security to prosecute his suit with effect and without delay, and that he would pay all damages which might accrue to the defendant

or any garnishee in consequence of the attachment. (R. S. 1835, p. 81, § 38.) The act of February 6, 1837, required a bond with the above conditions before the writ was issued, to be executed to the defendant or garnishee. But it was not until the passage of the act of February 13, 1839, that the defendant was allowed his plea in the nature of a plea in abatement; and if the issues raised by such plea were found for the plaintiff the cause proceeded, but if for the defendant, it resulted in a dismissal of the suit at the costs of the plaintiff, and he and his surety were declared liable on their bond for all damages occasioned by the attachment, or other proceeding in the cause. (Laws of 1838–9, p. 7, §§ 11, 12.)

The law underwent a still further change in 1845. For, although the provisions of the sections just cited remained unchanged, yet, the conditions of the bond were made more numerous and consequently more onerous. They were, that the plaintiff should prosecute his action without delay and with effect, refund all sums of money that might be adjudged to be refunded to the defendant or found to have been received by the plaintiff and not justly due to him, and pay all damages that might accrue to any defendant or garnishee by reason of the attachment, or any process or proceeding in the suit, or by reason of any judgment or process thereon. (R. S. 1845, § 4, p. 135.) The law thus remained until the year 1865, when a further change was made by providing that if the issues presented by the plea in abatement were found for the plaintiff, the cause should proceed, but if for the defendant, the attachment should be abated at the cost of the plaintiff, and he and his sureties should be liable on their bond for all damages occasioned by the attachment; but the suit should proceed to final judgment on the cause of action therein alleged, as though commenced originally by summons alone. (1 Wagn. Stat., p. 189, § 42.) Prior to the enactment of the law which allowed the defendant in attachment suits his plea in abatement, there can exist no rational doubt that if he proved victorious in a trial on the merits, an action in his favor lay on the bond, for otherwise, that instrument, whether executed

by the plaintiff under the order of the court as provided in the act of 1835, or by him as a condition precedent to bringing the suit as provided in the act of 1837, would be of no avail whatever, and utterly inoperative.

It is easy to perceive then from the above brief history of our attachment law, that the plea in abatement was a privilege granted to the defendant, and did by no means tend to either curtail or control the conditions of the bond. On the contrary, those conditions became more rigid in inverse proportion to the facilities afforded the defendant to defeat the plaintiff by a dilatory plea; as if the legislature, while at the same time providing additional grounds upon which attachment process might issue, were desirous of preventing the hasty and inconsiderate use of such process. Notwithstanding the provisions of section 42 of the existing law above referred to, that the attachment should abate upon the defendant's plea in abatement becoming successful, that section does not in any way limit or avoid the conditions of the bond given for the prosecution of the suit, and those conditions will be deemed broken if from any cause the suit is not prosecuted without delay and with effect, whether any plea in abatement be filed in the cause or not. And it is to be observed, that our statute differs widely on this point from the laws of those States mentioned in the authorities cited by defendants in support of their theory in this particular.

Those decisions hinged upon the question whether the conditions of a bond had been violated, which provided against the "wrongful" sueing out of the attachment, where the plaintiff failed to maintain his action. And the courts of the States of Alabama, Kentucky and Tennessee, under a statute of that kind, very properly held, "that the bond is not conditioned for the successful prosecution of the suit, but that the order for the attachment was not wrongfully obtained." (Sharpe vs. Hunter, 16 Ala., 765; Petit & Owen vs. Mercer, 8 B. Mon., 51; Smith vs. Story, 4 Humph., 169.)

By the very terms of our statute, however, the failure of the plaintiff to successfully prosecute his action, will *per se* sub-

ject him to liability therefor on his bond,—if we are to give to the language employed in that instrument its usual effect and significance; so that this subject of the plaintiff's liability in this regard, is after all narrowed down into the simple question: Does the bond mean what it says? If the proposition advanced by the defendants, that the relator is not entitled to a recovery because of his defending and defeating the action against him on the merits, instead of by means of a dilatory plea, be construed as correct, this result will follow: That the statute will become an engine of incalculable and intolerable oppression in the hands of any unscrupulous man, who, with impunity, could attach the property of a non-resident, keep the case pending in court from year to year, and then dismiss or bring it to trial at his leisure without incurring any liability beyond the paltry expense of an ordinary suit, simply because the defendant, although not his debtor, was unable to successfully plead in abatement. The law does not perpetrate such gross injustice and palpable absurdity. At a time when the conditions of an attachment bond were the same as under the present law, Gunn sued Roe, a resident of Iowa, in the St. Louis Circuit Court, by attachment, attached the goods of Roe, but did not retain them for any length of time as the friends of the latter immediately executed a forthcoming bond. Roe being a non-resident, and having therefore no ground for resisting the attachment, plead to the merits, defeated his adversary, and then brought suit on the bond and recovered for his direct damages and costs, the expenses incurred by him in the attachment suit for taking depositions; attorneys' fees; his hotel and traveling bills while attending the suit; the damages caused by detention of the goods and the amount expended in procuring their release; for value of his time and services, while attending, and interest on the money expended by him in said suit. He also sought to recover for injuries done to his credit and business, but this was denied him, and on his appeal to this court, the judgment was affirmed. (State to use of Roe vs. Thomas, 19 Mo., 613.) And although the atten-

tention of this court was only directed to the point last mentioned, yet at the same time it is worthy of remark, that it was tacitly conceded by the able counsel employed in the defense, that, aside from consequential injuries, there was no question of Roe's right to recover. That case is indential with the present one.

In conclusion, without entirely sanctioning all the declarations of law asked by the relator, I am satisfied that he was entitled to recover on the bond for any direct loss, damage or expense produced or occasioned "by reason of the attachment, or any process or proceeding in the suit, or by reason of any judgment or process thereon;" and that this language is sufficiently comprehensive to include all the damages for which this suit is brought, not excepting the alleged injury sustained by relator in the loss of the use of his money which as a matter of course cannot exceed the legal rate of interest on the sum detained.

Judgment reversed and the cause remanded. All the judges concur.