## CHAPMAN et al., Appellants, v. KERR.

1. **Sale or Consignment?** EVIDENCE. Plaintiffs made sundry shipments of goods to defendants, and with them in each case sent bills in the form of ordinary merchants' bills of sale. *Held*, that if nothing appeared to the contrary, the jury were warranted in finding that the goods were sold, and that they could not find that they were consigned unless there was contradictory evidence clearly preponderating.

2. ———— : ————. In order to overcome the presumptive evidence of a sale of goods, furnished by a bill accompanying the delivery thereof in the form an ordinary sales bill, it is not necessary to prove that such goods were received and accepted as a consignment if, pursuant to agreement, consigned for sale.

3. ———— : DEPOSITIONS, WHEN ENTITLED TO BE READ. A deposition taken pursuant to a stipulation that it should be read on the trial of the cause, subject to all objections on the grounds of irrelevancy, illegality and incompetency, may be read in evidence, although the witness at the time of the trial is within the jurisdiction of the court.

4. ———— : REPLEVIN, VALUE OF GOODS HOW ASSESSED : DAMAGES. In an action of replevin, where the defendant claims the goods replevied and demands a return thereof, and the jury find in his favor, they should assess the value of the goods at the time of such assessment, and the damages, if any, sustained by defendant in consequence of the taking and detention. *Pope v. Jenkins*, 30 Mo. 528, followed ; *Woodburn v. Cogdal*, 39 Mo. 228, and *Miller v. Whitson*, 40 Mo. 101, disapproved.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

REVERSED.

*Bryant, Holmes & Waddill* for appellants.

*Botsford & Williams* and *Scarritt & Scarritt* for respondents.

HENRY, J.—This is an action of replevin, instituted in the law and equity court of Jackson county by plaintiffs against defendants, to recover personal property, consisting

of lamp chimneys, lamps, globes, etc. Plaintiffs were wholesale queensware merchants at Chicago, in November, 1878, and Kerr & Clark then commenced business in Kansas City as retailers of queensware, and also did an auction business. This firm continued under the name of Clark & Kerr until March, 1879, when Clark went out of the firm, and Kerr continued the business until July 27th, 1879, when he made an assignment to Watts for the benefit of creditors. The principal question for the jury to determine, was whether the goods in question were sold to Clark & Kerr, and Kerr after the dissolution of the firm, or were consigned to them for sale on plaintiffs' account.

The goods, with the exception of one shipment, were all ordered by Kerr from time to time, as he desired. The only goods received from plaintiffs on verbal order, was the first shipment which Kerr ordered in person at plaintiffs' house in Chicago. Shipments extended from November, 1878, to July, 1879. In shipping the goods, plaintiffs sent Kerr a bill of the goods sold; and the bill in each instance, was in the form of an ordinary merchant's bill of sale of parcels, and recited that Clark & Kerr, and, after the dissolution of that firm, B. B. Kerr, bought of Chapman, Grier & Co., the plaintiffs, the items of goods described in the bill, and opposite each item plaintiffs set out the price at which the goods were sold, which was the same price at which plaintiffs sold the same class of goods to others. In quite a number of the bills sent to Kerr, the following statement was added : " Terms sixty days, or three per cent off for cash, if remitted in ten days from date of invoice." When plaintiffs sold Kerr these goods, they entered an itemized account of the goods sold in their ledger, and charged Kerr with the full amount, as in the bills rendered to him. These accounts were kept in the same book, and in the same manner, as accounts of goods sold to other purchasers, and were ordinary debtor and creditor accounts. No directions were given by plaintiffs to either Clark & Kerr, or Kerr, to keep the goods separate and distinct from

the other goods of Clark & Kerr, nor were they so kept, nor did they give to Clark & Kerr, or either, directions to keep an account of the goods, on the basis of consignment. There was no agreement as to the price for which Clark & Kerr, or Kerr, should sell the goods, or as to commissions they should receive on sales. Plaintiffs at no time before the dissolution of the firm of Clark & Kerr, requested a statement of account from that firm, nor was any ever made to them either by the old firm or Kerr, and, from time to time, Kerr gave plaintiffs notes and made payments, which were credited by plaintiffs generally on the account in plaintiffs' books.

The evidence for plaintiffs tended to prove that the goods were not sold to Clark & Kerr, or Kerr, but were consigned to them by plaintiffs for sale, under an agreement made with Kerr, when the first shipment was made. The court instructed the jury, at plaintiffs' instance, that " if the goods in controversy were shipped by plaintiffs to Clark & Kerr, or Kerr, their successor, as consignees, the verdict should be for plaintiffs." And refused one asked by plaintiffs to the effect that " if the goods were shipped by plaintiffs under an agreement between the parties that they should be consigned to Clark & Kerr, to be sold for plaintiffs, the verdict should be for plaintiffs," notwithstanding said goods were billed to the consignees on the ordinary bill-heads used by plaintiffs in case of goods sold and delivered, and notwithstanding Clark was never informed that said goods were not sold to Clark & Kerr.

By defendants' instruction number two, it was conceded that the bills of shipments were not conclusive evidence of 1. SALE OR CONSIGN- a sale of the goods, but that it was com-MENT ? evidence. petent for plaintiffs to show that, notwithstanding the delivery of these bills, the goods were really consigned to the consignees, as bailees and not as purchasers, and that is substantially what was declared by plaintiffs' refused instruction. Appellant complains that the court, in that instruction for defendants, declared that

the bills of goods accompanying the shipment, "were presumptive evidence that the goods were sold." The court did not declare that the law presumed a sale, but it was in effect a declaration that the jury might find, from the character of these bills, nothing appearing to the contrary, that the goods were sold to Clark & Kerr. Those bills were memorandums of sales, and it is going far enough to hold, as the court did in instructions given at defendants' instance, that it might be shown notwithstanding the delivery of those bills, that the goods were not sold, but consigned to be sold by consignees for plaintiffs. Nor was the instruction too emphatic in its declaration, that the evidence contradictory of those bills, to authorize a jury to find a consignment instead of a sale, should clearly preponderate.

That portion of the instruction is objectionable which declares that the jury should find, in order to overcome the presumptive evidence furnished by the bills of the goods, that they were delivered on consignment and were received and accepted on consignment, and not otherwise. If by the agreement they were not sold but consigned for sale, the consignees could not invest themselves with title by receiving them as purchasers, unless by some subsequent act it could be inferred that the consignors agreed that the consignees should hold as purchasers. There was evidence tending to prove that the goods were not sold by plaintiffs, and also that the consignees received and treated the goods as theirs by purchase. Therefore, under this instruction, if the jury found that the goods were not sold, but only consigned for sale, before they could find a verdict for plaintiffs, they had also to find that Clark & Kerr received and accepted the goods as consignees, and not as purchasers.

It appears from the record that the assignment by Kerr was made to Watts, on whose refusal to act as assignee, Scarritt was appointed by the court, and the court instructed the jury that Scarritt's title took effect from the time the assignment was executed, acknowledged and recorded, and

11—80

that defendant Kerr was not a real party in interest, and no declaration or act of his, after the assignment, was recorded, could affect or impair the assignee's title, and that no declaration made by Kerr, after the assignment was recorded, should be considered by the jury. Appellants contend that the effect of that instruction was to exclude from the consideration of the jury statements made by Kerr on his cross-examination to the effect that the original arrangement between him and plaintiffs was for goods on consignment, and that no other arrangement had ever been made. The instruction certainly had no such scope, and the jury, we think, could not have understood that the instruction to disregard declarations made by Kerr, extended to statements made by him in his deposition, as a witness in the cause. This objection, however, may be obviated on a retrial of the cause.

That deposition was taken by consent and under an agreement in writing entered into by the attorneys for the parties respectively. It was stipulated that it should be read on a trial of the cause, 3. ——: depositions, when entitled to be read subject to all objections on the grounds of irrelevancy, illegality and incompetency. Plaintiffs objected to the admission of the deposition, as evidence, on the ground that Kerr was then in Kansas City, where the cause was on trial, as appeared by the officer's return upon a subpœna issued by plaintiffs for Kerr. The court overruled the objection and the deposition was read. Our first impression was, that the deposition should have been excluded, but a careful consideration of the agreement has led us to a different conclusion.. It was taken by consent of parties, and afterward, as it appears from the agreement, it was stipulated that it should be read at the trial, subject to objections on grounds of irrelevancy, incompetency and illegality. The objection that Kerr was within the jurisdiction of the court was not one of those which plaintiffs reserved the right to make on the trial. When a deposition is taken on notice, in the absence of stipulations on the subject, the deposition cannot

be read, if the witness is present, but clearly by the agreement in question, the plaintiffs waived their right to make that objection. Kerr's presence did not render the testimony given by him irrelevant or incompetent, and certainly did not affect the legality of the taking of the deposition.

The trial resulted in a verdict and judgment for defendants, and the value of the goods found by the jury, under an instruction of the court, was the market value at the time the suit was brought. This question was considered in the case of *Pope v. Jenkins*, 30 Mo. 528, and it was there held that the value of the goods, at the time of the assessment, is the value to be found by the jury, and if depreciated in plaintiffs' hands, in consequence of the replevy of the goods, or by his acts after the replevy, the jury should consider such depreciation in their estimate of damages occasioned by the taking and detention. *Woodburn v. Cogdal*, 39 Mo. 228, and *Miller v. Whitson*, 40 Mo. 101, are cited as announcing a different doctrine. In both of those cases, the question before the court seems to have been the measure of damages. In the latter it is observed: "It is well settled by the decisions of this court that the measure of damages in such cases, where the finding of the jury is for the defendant, is the value of the property when taken with legal interest thereon to the time of trial." No authority whatever is cited in the opinion, nor in that delivered in *Woodburn v. Cogdal*, in which it was said: "The true measure of damages in such cases is the value of the property at the time of the seizure with interest at the rate of six per cent per annum until the time of trial."

The statute, section 3854, Revised Statutes, is substantially the same as section 11, Revised Statutes 1855, page 1245, construed in *Pope v. Jenkins, supra*, and provides that "if plaintiff fail to prosecute his action with effect and without delay, and shall have the property in his possession, and defendant in his answer claims the same and demands

*4. ———: replevin, value of goods how assessed: damages.*

a return thereof, the court or jury may assess the value of the property taken, and the damages for taking and detaining the same, for the time such property was taken or detained from defendant until the day of the trial of the cause." The language, "for the time such property was taken or detained from defendant until the day of the trial of the cause," evidently relates only to the damages for the taking or detention. The jury nor court is required to ascertain the different values the property may have borne from the time it was replevied to the trial of the cause. The statute, as Judge Napton observed in *Pope v. Jenkins*, "gives to the party succeeding the choice of taking the property or its value. These terms are understood, therefore, to be equivalent, but they could not be so, if by the value of the property is meant its value three years perhaps before its assessment, or any other period during which the litigation has been progressing." Says the court in the same case, "The question to be determined here is not as to the measure of damages but as to the value of the property." And so it is whether plaintiff is in possession and fails in his suit, or defendant is in possession and fails in his defense. The court held the same rule applicable to either case. We are of opinion that the statute was properly construed in that case, and that the other cases herein cited and relied upon by respondent, confound the value of the property to be found and the damages to be assessed, and the learned judge who delivered the opinions overlooked the case of *Pope v. Jenkins*, and did not duly consider the provisions of the statute.

The judgment is reversed and the cause remanded. All concur, except NORTON, J., absent.