Anchor Milling Company, Appellant, v. Michael Walsh, Respondent.

St. Louis Court of Appeals, January 4, 1887.

1. Replevin—Practice—Questions of Fact.—In actions of replevin, where the evidence of title is conflicting, the question must be submitted to the jury, although the weight of evidence is on one side

2. ——— Damages—Instructions.—In such actions the plaintiff may recover the reasonable value of the use of the property detained, while so detained.

3. ——— Practice—Excessive Damages.—A verdict for damages for the use of the property so detained five-fold more than its value will be set aside, unless reduced by *remittitur* to an amount warranted by the evidence.

Appeal from the St. Louis Circuit Court, Amos M. Thayer, Judge.

*Reversed nisi.*

G. M. Stewart, for the appellant.

A. R. Taylor and A. A. Paxson, for the respondent.

Thompson, J., delivered the opinion of the court.

This case was before us on a former appeal and is reported in 20 Mo. App. 107. After being remanded by this court, the case was again tried in the circuit court before a jury, and the result was that the plaintiff had a verdict and judgment for all the property in controversy, except two stake wagons and five sets of harness, as to which the jury found in favor of the defendant, that he was entitled to possession, and assessed the value of such property at two hundred dollars, and the damages for the taking and detention of the same at one thousand

dollars. The plaintiff moved for a new trial on the ground (among others) of excessive damages; and the court, as the condition for overruling the motion for new trial, required the defendant to remit five hundred dollars of the damages, which was done. The court thereupon overruled the motion for new trial and rendered judgment in accordance with the verdict and the *remittitur*, and from this judgment the appellant prosecutes the present appeal.

Two points are urged in this court by the appellant.

I.   The first is that the court erred in giving the first instruction requested by the defendant, because there was no evidence in the case to which it was applicable. This point is clearly not well taken. The instruction was as follows :

"The court instructs the jury that if they find, from the evidence in this case, that after November 25, 1881, the defendant did hauling for the plaintiff, and that by arrangement between the plaintiff and the defendant, the plaintiff, from time to time, was to deduct a portion of the defendant's earnings and apply the same on account of the money due by the defendant to the plaintiff, as evidenced by the bill of sale read in evidence ; and if the jury believe from the evidence that the plaintiff by its proper officer, did, in pursuance of said arrangement, deduct from the earnings of the defendant as much, or more than was due under said bill of sale, and apply same upon the indebtedness evidenced by said bill of sale before this suit was brought, then said bill of sale was paid, and the plaintiff can not in this action recover the two wagons and five sets of harness, and as to said property, the verdict must be for the defendant."

The evidence of the defendant was positive to the effect that the two stake wagons and five sets of harness, as to which the jury found in his favor, were not included at all in the bill of sale mentioned in this instruction, and, although there was some testimony to the contrary, there was no attempt directly to rebut this

statement. Without stating the evidence in detail, it will be sufficient further to say that there was also evidence in the record tending to show that the defendant had earned in hauling for the plaintiff, under the arrangement mentioned in the instruction, more than enough to discharge the indebtedness which the bill of sale was intended to secure. If, as the plaintiff's counsel now argues, there was no evidence also tending to show that the plaintiff had deducted from the defendant's earnings an amount sufficient to pay this debt, and *applied* them to its payment before this action was brought, it may be answered that this is immaterial; since the law itself would make the application for the purpose of saving a forfeiture. And, hence, in so far as the instruction required an application, by the union of the minds of the parties, of any balance due from the plaintiff to the defendant upon the debt secured by the bill of sale, although the instruction was erroneously drawn, the error was in favor of the plaintiff. In either point of view, then, it can not be held that the court erred in giving the instruction.

II. The second point is that the damages are excessive; and we again meet with the proposition, seriously argued, that the measure of damages is interest on the value of the property from the time of the seizure under the writ to the date of the trial. We decided in this case on the former appeal that the measure of damages is the value of the goods at the time of the assessment of the damages, together with such damages as the defendant may have sustained by reason of the caption and detention; and the court correctly admitted evidence to show the reasonable value of the use of the property during the time of the caption and detention. In *Burkeholder v. Rudrow* (19 Mo. App. 60), the Kansas City Court of Appeals approved an instruction, given for the plaintiff in an action of replevin, which told the jury to assess as damages, "the value of the reasonable use and service of all said property" from the date of the

caption and detention to the date of the trial.   The court in that case bases its conclusions upon the doctrine of *Pope v. Jenkins* (30 Mo. 528); *Chapman v. Kerr* (80 Mo. 158), and *Mix v. Kepner* (81 Mo. 93), all of which hold that the value of the property at the date of the assessment of the damages, and not its value at the date of the wrongful taking, should be assessed by the jury as the value of the property ; but all of which leave the question of damages for the detention of the property undetermined.

It would necessarily seem to follow from such a holding, however, that interest on the value of the property, between the date of its taking and the final valuation, can not be the exclusive criterion of the plaintiff's damages ; because one element on which to base such calculation, namely, the value of the property when wrongfully taken, may be missing, or because the property may be of a character which the defendant could have put to no use whatever, in which case the allowance of interest would exceed his actual damages.

It was said in *Pope v. Jenkins* (30 Mo. 537), that the jury might be allowed, in the form of damages, to estimate the depreciation of property occasioned by its detention, and this unquestionably is a legitimate element of damage.   We do not understand, however, that the court intended to intimate that this is the sole element. Where the property is such as to yield a certain fixed income, which is capable of being estimated beyond conjecture, it would seem that such income, less the value of time and labor bestowed on its care and the cost of necessary repairs, if any, to which it is subject, forms a legitimate part of the measure of damages to be awarded to the party from whom the property is wrongfully detained.   It must be borne in mind, however, that the law in all such cases aims at *compensation*, and no more. The difficulty is not in stating the true measure of damages, but in correctly applying it to the facts of any given case, as the variety of facts may be infinite.

In this case the court instructed the jury that, in estimating the defendant's damages, the jury may take into consideration the value of the use of the property while the defendant was dispossessed of the same.

This instruction was not sufficiently explicit, since it was the net value of the use, after deducting the amount of depreciation produced by use and the probable cost of repairs, which, at most, would form the defendant's measure of damages. But, as it can not be affirmed as a proposition of law, that the jury were not entitled to take into consideration the value of the use of the property while the defendant was dispossessed of the same, the giving of the instruction was not error for which the judgment can be reversed. It was a case of *non-direction* merely, and comes within the well settled rule that mere non-direction in a civil suit is not error, unless sufficiently definite and otherwise proper instructions were asked for and refused.

But it is evident that the jury, by reason of not having been properly instructed as to the elements of damage, made their award upon mere conjecture and speculation as to what the use of the property *might* have brought, *if* it could have been rented out during the period of the detention, at the figures given by the witnesses. In this manner they assessed the value of the use of the property for a period of two years and three months at five times the actual value of the property as found by them, a verdict, which under the facts of the case, could only be the result of prejudice or mistake. There was no evidence in the case that stake-wagons or double harnesses are habitually rented out in this market, or in any other market, at the prices named by the witnesses, or at any other prices. If a man could get two or three hundred per cent. interest on an investment in this way, every capitalist in town would convert his money into stake-wagons and double harnesses, and the market would soon be glutted with those commodities offered for hire. The jury were not, on well settled principles

bound by the opinions of witnesses as to the value of the use of this property, and should not have followed them into such extravagant results. For the same reason we are not bound by such opinions ; and where we can see that they have produced a verdict extravagant and unconscionable, we will not permit it to stand.

It is true the court tried to remedy this error by compelling the defendant to remit one-half of the damages as found ; but there is no more warrant for five hundred dollars damages in the facts of this case, than there was for one thousand dollars. If the court desired to mitigate the damages in order to prevent a new trial, it should have ordered the defendant to remit enough to bring the verdict within an amount which would not shock ordinary business sense.

Led by these considerations, we will reverse the judgment and remand the cause, unless the defendant will, by *remittitur*, within ten days, reduce his damages for detention of the property to one hundred dollars, which is the utmost that the facts of this case will warrant. It is so ordered. All the judges concur.