THE STATE TO USE OF J. W. BURTON, Respondent, v. THOMAS MCKEON ET AL., Appellants.

St. Louis Court of Appeals, May 3, 1887.

1. ATTACHMENT — DISSOLUTION — DAMAGES.—Proof that the court made an order that, unless the plaintiff give a bond within a time specified, the attachment be dissolved; that the plaintiff failed to give such bond, and that, after the specified time, the sheriff re- turned the property to the defendant, shows such a dissolution of the attachment as will authorize the defendant to sue on the attachment bond.

2. ——— MEASURE OF DAMAGES.—Counsel fees and other expenses incurred in obtaining a dissolution of an attachment, together with the value of the use of the attached property during its detention, where such property, consisting of work animals and utensils, is restored to the defendant, may be recovered as damages in an action on the bond.

3. APPELLATE PRACTICE—EXCESSIVE VERDICT.—Where a verdict is excessive on any intelligent construction of the evidence, and where the record contains no sufficient data for the correction of the error, the cause will be remanded.

Appeal from the St. Charles County Circuit Court,
W. W. Edwards, Judge.

*Reversed and remanded.*

W. A. Alexander and George W. Royse, for the
appellants : In order to sustain a suit on an attachment
bond, it is necessary for the plaintiff to show that the
attachment suit had been finally disposed of, adversely
to the plaintiff in that suit. *The State to use v.
Williams*, 48 Mo. 210 ; Drake on Attachment, p. 107,
sect. 162*a ; Nolle v. Thompson*, 3 Met. [Ky.] 121. In
the attachment suit the record discloses no order of the
circuit court upon the sheriff, to deliver the attached
property to the defendant, Burton, and such an order is
necessary, to render the obligors liable upon the bond
herein. *Brotherton v. Thompson*, 11 Mo. 94 ; *Jones v.
Jones*, 38 Mo. 429. The measure of damages in such
suits is the market value of the goods taken, and legal
interest on the same, if lost ; or if the property is after-
wards returned to the owner, legal interest on the market
value of said property, for the time for which the owner
was deprived of the use of the property. *Spencer v.
Vance*, 57 Mo. 427 ; *Watson v. Smelting 'Co.*, 8 Mo. App.
604 ; *The State to use v. Allen*, 12 Mo. App. 566 ; *The
State to use v. Bacon*, 24 Mo. App. 403.

Theoderick F. McDearmon and Louis H. Breker,
for the respondent : The value of the use of the prop-
erty during the time of its detention is an element of
damage in an action on the bond in attachment. *Mix
v. Kepner*, 81 Mo. 93 ; *Chapman v. Kerr*, 80 Mo. 158 ;
*Jackson v. Allen*, 12 Mo. App. 566 ; *The State to use v.
Thomas*, 19 Mo. 613. Attorneys' fees are a proper
element of damages in such cases, and it was not error to
admit testimony on that subject. *The State to use v.
Stark*, 75 Mo. 566 ; *The State to use v. Beldsmeier*, 56
Mo. 226 ; *The State to use v. Allen*, 12 Mo. App. 566.

THOMPSON, J., delivered the opinion of the court.

This is an action upon an attachment bond, the condition of which was that the plaintiff "should prosecute his action without delay and with effect; refund all sums of money that might be adjudged to be refunded to the defendant, or found to have been received by the plaintiff, and not justly due to him ; and pay all damages and costs that might accrue to any defendant or garnishee by reason of the attachment, or any process or proceedings in the suit, or by reason of any judgment or process therein." A trial before a jury resulted in a verdict and judgment for the relator, for the penalty of the bond, with an assessment of damages at the sum of three hundred and seventy-five dollars. The defendants prosecute this appeal.

The attachment was sued out on the thirtieth day of May, 1884. On the same day, it was levied by the sheriff upon the following personal property of the defendant: One gray horse mule, one sorrel horse mule, two sorrel mare mules, one bay horse mule, one brown horse mule, one bay horse, one brown horse, one brown stallion, five two-horse wagons, one sulky, five sets of double harness, two tents, two stoves, and "all feed for stock on hand."

On June 4, the sheriff, at the request of the plaintiff, released the following described personal property from the levy: One sorrel horse mule, two sorrel mare mules, one bay horse mule, one brown horse mule, one two-horse wagon, one set of double harness, two tents, and two stoves, and delivered the same to the possession of the defendant in the attachment.

On the ninth day of June, 1884, the defendant in the attachment moved the court to compel the plaintiff to give another bond, for the reason that the bond given was insufficient, alleging that the principal and sureties therein were insolvent. On the same day the court made the following order: "Now at this day appear

the said parties, by their respective attorneys, and the motion of said defendant to require said plaintiff to give another bond in this case coming on to be heard, it is considered by the court that the same be sustained. And it is ordered by the court that said plaintiff give another bond herein, with further security, within ten days after this date, and that if said plaintiff shall fail to give said bond, the attached property shall be released." No bond was ever given in pursuance of this order, nor does any subsequent order of the court touching the attachment proceedings appear of record in the cause.

The following additional return of the sheriff was endorsed on the writ of the attachment : " And on June 23, 1884, by virtue of an order of the circuit court of St. Charles county, Missouri, I did release all of the remaining property described in the above levy." The order referred to in this return was, doubtless, the order above quoted, since no other order appears of record in the attachment proceedings to which it could refer.

I.    In this state of the record, the first question presented by the appellants is, whether, at the date of the institution of the present action, the attachment proceedings had come to an end, so as to entitle the defendant therein to maintain this action on the attachment bond. We are of opinion that the proceedings had come to an end. A supplementary order, reciting the failure of the plaintiff in the attachment suit to give the additional bond, as required by the order of June 9, and quashing the attachment, and directing a release of the property by the sheriff, might have been more regular, but it does not seem to have been necessary. Indeed, it may not have been practicable. The court may have adjourned for the term prior to the expiration of the ten days. The sheriff could easily learn whether the additional bond had been given, and, under the terms of the order, if the additional bond had not been given within the ten days prescribed, he might have become liable, as

a trespasser, for continuing to hold the attached property. The recital in the order of June 9, "that, if the said plaintiff shall fail to give said bond, the attached property shall be released," was tantamount to a direction to release the attached property after the expiration of the ten days, in default of the giving of the new bond. The order was authorized by the terms of the statute (Rev. Stat., sect. 406), and it is provided in section 407, that if the plaintiff shall fail to comply with such order, within ten days after the same shall be made, the suit shall be dismissed at his costs. No formal order, dismissing the suit, has ever been entered, and it is conceded that, at the time of the trial of this action, it was still pending ; but it seems that the clause of the order of the court, last quoted, had the legal effect of discharging the attachment, without the making of any further order in the cause. If so, the condition of the bond, which had been given, was thereupon broken, and a right of action thereon accrued to the defendant in the attachment. Actions of this kind sustain some analogy to actions for the malicious prosecution of criminal actions, and in such a case we have recently held that the essential thing, in order to give the plaintiff a right of action, provided it exists upon other meritorious grounds, is, that the prior prosecution should have come to an end, and that it is immaterial in what manner it came to an end. *Kennedy v. Holladay, ante,* p. 503. In the present case, upon analogous reasoning, we hold that it is not necessary, in order to give a right of action on the bond to the defendant in the attachment suit, that the attachment proceeding should have come to an end, by the trial of an issue made by a plea in abatement, or by a judgment, in favor of the defendant, on the merits. The essential thing is, that it came to an end in some way ; since, in whatever way it came to an end, the plaintiff therein has failed to sustain the undertaking, for the performance of which he gave a bond, and the defendant has suffered damage and loss, which are covered by

the terms of the bond, and for which he is entitled to compensation at the hands of the parties to the bond.

II.   It follows, from this reasoning, that we do not regard the next point, made by the appellants, as tenable : that the defendant in the attachment suit (plaintiff herein), by declining to take any further steps in the attachment matter, by filing his answer, and by going to trial on the merits of the case, as shown by the record, has waived all rights, accruing to him under the attachment bond.   If the attachment had subsisted, he would, indeed, have waived the right to plead in abatement thereto ; but the law does not require the doing of a vain thing,   and   the   attachment,   having   come   to   an   end in another way, and the attached property having been restored to the defendant in the attachment suit, it was not necessary, in order that he should acquire a right to sue on the bond, for him to plead in abatement, and succeed upon a trial of the issue thereunder.

III.   For the foregoing reasons, we, likewise, regard the contention as untenable, that a formal order of the court was necessary requiring the sheriff to deliver the attached property to the defendant in the attachment. The authorities cited in support of this contention have no application to the question.   *Jones v. Jones* (38 Mo. 429), does not touch the question at all, directly or inferentially ;   and   *Brotherton v. Thomson* (11 Mo. 94), merely holds that, where property is attached in the hands of a person, not the defendant in the attachment suit, and is retained by giving bond to the sheriff for its delivery, " when and where the court shall direct," etc., an order of the court for its delivery is necessary to render the obligor liable to an action *on the forthcoming bond*.   The reason of the rule is, that the bond had not been broken, by its very terms, until the court should direct the delivery of the property, and the direction should not be complied with.   That holding has no application to this case, and, contrary to the argument of the learned counsel for the defendants in this action,

we are of opinion that the sheriff is so far the agent of the plaintiff in the attachment suit that he may be regarded, if necessary, for the purposes of this action, as having acted under the direction of the plaintiff in the attachment suit, in restoring the attached property to the defendant in such suit.   But it is not necessary to treat him as so acting, since his return shows that he professed to act in virtue of the order of the court, and the order, itself, justified his action.

IV.   The next assignment of error is, that the court erred in admitting evidence in behalf of the plaintiff, as to the value of the services of the animals taken by the sheriff under the writ of attachment, during the time they were in the possession of the officer, and, also, in instructing the jury as to the measure of damages in suits on attachment bonds, as set forth in the following instruction,  given at the request of the plaintiff :

"The jury are instructed that the defendants are liable for all costs the relator, John W. Burton, incurred in defending  the  attachment suit brought by Thomas McKeown against him, including all costs of his own attendance and  such  reasonable attorneys' fees in defending  said  attachment,  and,  also, for  all damages occasioned  to  him by  loss of time,  and all delays and expenses, the direct result of said attachment."

The evidence objected to, was evidence to the effect that, at the time of the seizure of the property under the attachment, which property, it will be perceived, consisted of nine head of mules and horses and four or five wagons, shown by the testimony to be what was called four teams and a-half, that is, four double teams and one single team, the defendant in the attachment, (the plaintiff herein), was engaged with his teams in the performance of certain contracts for the building of levees, and was obliged, in order to perform his contracts,  to hire other teams to take the place of those seized by the sheriff, at an expense to him of three

dollars, and $3.50 a day for each full team. It is perceived that the question which arises upon this ruling is, whether losses incurred by the defendant in the attachment suit, in consequence of the temporary deprivation of the use of the attached property, where such property has afterwards been returned to him, are fairly within the undertaking of the attachment bond. It was held in *The State to use v. Thomas* (19 Mo. 613), that consequential damages, such as injuries to the credit and business of the defendant in the attachment suit, can not be recovered by an action on the bond, but can only be recovered by an action on the case for maliciously suing out the attachment. "Nothing can be clearer," said Scott, J., in giving the opinion of the court, "both on principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract.  *  *  *  The statute. was not designed to give damages beyond the natural and proximate damages resulting from the suing out of an attachment. For injuries to his credit and business, the plaintiff is only entitled to damages, where the motives of the defendant have been vicious, where his proceedings have been malicious and vexatious. To allow damages for loss of credit to business, in an action on the bond, would be to make the plaintiff responsible in one form of action, when, if it had been brought in another form, he might have interposed a defence which would have protected him. In a suit on the bond, the defence of a probable cause would be unavailing. However upright and innocent his motives, he would be mulcted in the same manner, and to the same extent, as though his conduct had been swayed by the blackest malice." 19 Mo. 616, 618. Under the rule of this case the inquiry, thus, is, whether the expense to which the defendant in the attachment suit was put, by reason of having to hire other animals to replace those which were seized under the writ, is to be regarded as "natural and proximate damages resulting from the suing out of the

attachment." We are of opinion that it is to be so
regarded. We do not find any decision upon the precise
question in this state, but we regard a case of this kind,
where property in actual use by the owner has been
levied upon under an attachment, and, after a temporary
detention, restored to him through the failure of the at-
tachment proceeding, as analogous, in respect of the
measure of damages to the case of the wrongful seizure
of property in an action of replevin and re-delivery of
the same to the owner, in consequence of his being suc-
cessful in the action ; in which case the measure of dam-
ages is not merely legal interest upon the value of the
property during the period of the temporary detention,
but the value of the use of the property. *Anchor Mill-
ing Co. v. Walsh*, 24 Mo. App. 97. By the value of the
use of the property, the market value of the use will
generally be understood ; but in certain cases where, by
reason of the situation of the owner of the property, the
use to him may have a different value from the market
value, we are not prepared to say that he is not entitled
to recover the value of the use of the property *to him*.
It was recently held by the supreme judicial court of
Massachusetts that, where the plaintiff in an action of
replevin recovers damages for the detention of the prop-
erty, it being personal property in his use at the time of
its seizure by the defendant, the jury may award such
an amount as they shall be satisfied the use of the prop-
erty was worth, *to the plaintiff*, during the time of its
detention. *Boston Loan Co. v. Meyers*, 3 New Eng.
Rep. 511. Certainly, nothing less than such a measure
of damages will make the defendant in the attachment
suit whole, in a case like the one before us. But, aside
from this, the presumption is, that the amount which the
defendant in the attachment suit (plaintiff in this action)
was obliged to pay, and actually did pay, in the hiring
of other teams to carry out his contract with the levee
work, was the market value of the use of such teams at the
time ; and on this presumption the case is brought within

the rule of damages laid down in *Anchor Milling Co. v. Walsh* (24 Mo. App. 97). We are cited to a class of decisions, in actions of trover, where the measure of damages is held to be the market value of the property at the time of the conversion, with legal interest thereon. *Spencer v. Vance,* 57 Mo. 427 ; *Polk v. Allen,* 19 Mo. 467 ; *Carter v. Feland,* 17 Mo. 383 ; *Funk v. Dillon,* 21 Mo. 294 : *Watson v. Harmon,* 85 Mo. 443 ; *Moore v. Winter,* 27 Mo. 380.

We are aware that the same rule is applied in actions of trespass against sheriffs, marshals, and constables, for making illegal seizures of chattels under judicial process. *Walker v. Borland,* 21 Mo. 289 ; *Stevens v. Springer,* 23 Mo. App. 375, 385 ; *Eichelmann v. Weiss,* 7 Mo. App. 87. We are, also, aware that the same rule of damages has been applied in suits under indemnifying bonds, given under the sheriff and marshals' act of March 3, 1885, applicable to the city and county of St. Louis. *The State to use v. Smith,* 31 Mo. 566. Nor do we overlook the decision of the supreme court in *The State to use v. Beldsmeier* (56 Mo. 226), where it was held that, while the defendant in an action may recover, in an action upon the attachment bond, damages growing out of the detention by garnishment of money due him, yet such damages can not exceed the legal rate of interest. The reason for thus limiting the measure of damages for the detention of *money* would plainly be found in the statute, founded in supposed principles of public policy, which limits the rate of interest for the use or forbearance of money. There is, we must confess, no logical or sensible distinction between the measure of damages for the temporary detention of money and that for the temporary detention of any other species of property. But we are dealing with a question where the established rules are, to a great extent, arbitrary, and where they, while aiming at compensation, confessedly fall short of affording it in most cases. The rule of damages above stated,

as applicable to cases of trover and trespass *de bonis asportatis*, is applicable to cases where the conversion is total, and not where the property is restored to the owner after a temporary detention. We have already seen that, in cases of replevin, where the property is recovered by the rightful owner at the termination of the action, our supreme court has refused to apply this rule of damages, for the reason that it does not, in all cases, afford adequate compensation for the loss sustained (*Mix v. Kepner*, 81 Mo. 93 ; *Chapman v. Kerr*, 80 Mo. 158 ; *Pope v. Jenkins*, 30 Mo. 528 ; *Anchor Milling Co. v. Walsh*, 24 Mo. App. 97) ; and we do not feel bound to apply the analogy of the rule, applicable in actions of trespass and trover, to cases like the one before us. The rule of damages in cases of trespass and trover is not necessarily the governing rule in actions on attachment bonds, where there has been a temporary detention and restoration of the property levied upon ; because, as already seen, under the decisions of the supreme court, the measure of damages in such actions extends much beyond the value of the property seized under the writ. If the defendant in the attachment suit, waiving the bond, or, finding the bond valueless by reason of the insolvency of the sureties, should bring an action of trespass *de bonis asportatis* against the plaintiff in the attachment and the sheriff, we do not undertake to say that he would be entitled, under the decision in *Walker v. Borland*, to any larger measure of damages than the value of his property, in the case of a complete conversion, with interest upon such value to the time of the trial. But, under the decisions in *The State to use v. Thomas* (19 Mo. 613), and *The State to use v. Beldsmeier* (56 Mo. 226), if his action were upon the bond, he would be entitled to all the costs and expenses of defending the attachment suit, including the incidental expenses of traveling, and even interest upon his pecuniary outlays.

These rulings and the language of the statute (Rev.

Stat., sect. 404), prescribing the terms of the bond, show that the legislature regarded the attachment as a harsh process, not to be resorted to by creditors, except in emergencies, where, through the fraud of their debtor, or otherwise, they were liable to lose their debts, and that it was accordingly the purpose of the law-makers to prescribe a bond in such terms as should afford, in case of the wrongful suing out of an attachment, ample indemnity to the defendant. In an action of this kind, where the writ is levied upon the animals and tools whereby the defendant is carrying on his business and prosecuting his means of livelihood, and where he is obliged to go on the market and replace them, during the period of temporary detention, at such prices as the state of the market for the time being may oblige him to pay, it is too obvious for extended discussion that he does not receive indemnity for his loss, if he receives merely the small sum which would be arrived at by computing interest upon the value of the chattels during the period of detention. We have no difficulty in saying that the decisions in *The State to use v. Thomas* (19 Mo. 613); *The State to use v. Beldsmeier* (56 Mo. 226); *The State to use v. McHale* (16 Mo. App. 478), and *The State ex rel. v. Shobe* (23 Mo. App. 474), show that the analogy between actions on attachment bonds and actions on indemnifying bonds, given under the sheriff and marshals' act, relating to St. Louis city and county, is far from complete, and that the rule of damages in those cases will embrace any direct injury which the attachment defendant has sustained through the temporary deprivation of the use of his said property.

V. We are, also, of opinion that the contention, that the court erred in admitting testimony as to the attorneys' fees in defending against the attachment, and in instructing the jury that attorneys' fees were a proper element of damage in such cases, is not well founded. In *The State to use v. Beldsmeier* (56 Mo. 226, 231), Sherwood, J., in giving the opinion of the court, said

that the language of the "statutory attachment bond is sufficient to entitle the defendant in the attachment to recover on the bond for any direct loss, damage, or expense, produced or occasioned by reason of the attachment," etc. In that case, quoting from the decisions of the supreme court, in *The State to use v. Thomas* (19 Mo. 613), attorneys' fees are expressly enumerated among the expenses which may be recovered in such an action. In the last named case, damages were recovered for costs of taking depositions, and other taxable costs in the attachment suit; for attorneys' fees in the attachment suit; for hotel and traveling bills while attending to such suit; for expenses in taking witnesses to the place of taking their depositions, and for their board while attending; and for the direct damages sustained by the defendant in the attachment, through the detention of his goods, and the expenses incurred by him in procuring their release, as well as for the value of his time and services while attending the attachment suits, and interest on the money expended by him therein. It is true that the disputed question in that case was, whether consequential damages to business and credit can be recovered in an action on an attachment bond; but that case, the subsequent case of *The State to use v. Beldsmeier* (56 Mo. 226), the decision of this court in *The State to use v. McHale* (16 Mo. App. 478), and the recent decision of the Kansas City court of appeals, in *The State ex rel. v. Shobe* (23 Mo. App. 474), all go to show that attorneys' fees are within the rule of damages, in actions of this kind; and this principle was recognized by the recent decision of this court, in *The State to use v. Larabie* (*ante*, p. 213).

VI. Against the objection of the defendant the court admitted evidence of the cost of taking depositions and of the value of attorneys' fees in defending the action on the merits. We do not see, however, that it was specifically objected by the defendants, that the expenses of defending the action on the merits, after the

release of the attachment, can not be recovered as damages on the attachment bond. It is true that, in the instructions, the court confined the jury, in directing them as to the measure of damages, to the costs and expenses of defending the attachment, and to damages which were the result of the attachment. Instructions, given at the request of the defendants, admonished the jury that, should they find for the plaintiff, they were not compelled to allow the plaintiff any sum whatever for attorneys' fees expended in the former suit, unless the evidence showed that such services were necessary in defending the attachment, and that the jury might allow a reasonable sum for attorneys' fees, if the same were paid in defending against the attachment alone, and were necessary; though it was optional with the jury as to whether they would allow the same or not. The award of damages is very large. We doubt whether it can be sustained upon an analysis of the evidence, even upon the theory of allowing the plaintiff all the costs of the suit, including attorneys' fees incurred in defeating the attachment. But these fees and expenses are so blended together that it was impossible for the jury, and it is impossible for us, to conjecture how much of them are to be charged to defending against the attachment, and how much to defending the merits of the action.

In *The State to use v. Larabie* (*ante*, p. 213), which case came from the same circuit court as the present case, we held that, in a suit on an attachment bond, whether the attachment has been dissolved upon a trial of a plea in abatement or by a voluntary dismissal, such damages only are recoverable as are connected with the attachment, or with some proceeding relating thereto, excluding from the rule of damages the expense of defending the action on the merits after the dissolution of the attachment. It is plain in this case, that, although the court, in instructing the jury, admonished them, in substance, to allow only the expenses of resisting the attachment and the direct damages caused by the suing

out of the same, yet, as the general expenses of the suit, both before and after the dissolution of the attachment, were mingled together in the testimony, the jury could not, even under the instructions, arrive at a proper measure of damages ; nor can we cure what seems to be an excessive award of damages by ordering a *remittitur*, since we can not determine from the evidence how much ought to be remitted. In this unsatisfactory state of the record, we think we exercise our discretion most wisely in holding that there ought to be another trial of this case.

We accordingly reverse the judgment of the circuit court and remand the cause. Judge Rombauer concurs. Judge Lewis is absent.