JOSEPH SCHNAIDER BREWING COMPANY, Respondent, v. TONY NIEDERWEISER *et al.*, Appellants.

### St. Louis Court of Appeals, December 20, 1887.

1. PRACTICE, APPELLATE—PRESUMPTIONS.—In civil actions, where no instructions are asked or given, every presumption admissible under the testimony must be made in favor of the court's findings of fact.

2. FORTHCOMING BOND—OBLIGORS—ESTOPPEL. — The obligors in a forthcoming bond in replevin are estopped by the recitals of the bond from showing that the property therein alleged to be retained was never in their possession.

3. ——— DAMAGES.—In a suit upon such a bond the obligors are liable only for the value of the property at the date of the trial, and damages as in replevin, which value must be shown by legal evidence.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Reversed nisi.*

MUENCH & CLINE, for the appellants.

BROADHEAD & HAEUSSLER, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This is a suit in replevin for certain fixtures and furnishings contained in a saloon on the corner of Sixth and Chestnut streets, in the city of St. Louis. The cause was tried before the court, sitting as a jury, and judgment was rendered for the plaintiff.

It appears from the testimony that, in the year 1885, Charles Martin occupied the premises as a tenant, and owned the fixtures and furnishings in controversy. In September of that year, being indebted to John H. Vette, for borrowed money, he conveyed the property

in dispute to Vette by chattel mortgage, and afterwards turned over the property to the mortgagee. In December, or thereabouts, the defendant, Niederweiser, obtained from the owner a lease of the building, and effected an understanding with Vette and Martin that he should purchase the fixtures for four hundred dollars, and go into possession of the property. The plaintiff had previously furnished Niederweiser with one hundred and fifty dollars to enable him to pay the first month's rent. Niederweiser paid one hundred dollars to Vette, leaving three hundred dollars of the purchase money for the fixtures unpaid. What then followed is differently told by the several parties to the transactions. Joseph M. Schnaider testifies that the plaintiff corporation, of which he is vice-president, paid the balance of three hundred dollars purchase money, took possession of the premises, and received a bill of sale, which was shown in evidence, from Vette and Martin; that the plaintiff then put Niederweiser in to sell its beer, and gave him the use of its fixtures, so long as he sold its beer. The witness further said: "The transfer was arranged by Vette, Niederweiser and Martin, and Merrill, our secretary. * * * Niederweiser paid one hundred dollars to Vette on account of the four hundred dollars, and for our account as part of the one hundred and fifty dollars, advanced by us for his rent. The plaintiff never ran the saloon. Niederweiser did that. His sign was put up, and still remains there. He had possession of the property in question from the time we bought the property. It was with our consent that he carried on the saloon business. * * * In December the purchase was made, and he took possession immediately thereafter. That was according to the understanding. * * * I don't know what arrangement Niederweiser had with Vette. Our secretary paid the three hundred dollars to Vette and closed the transaction."

The defendant Niederweiser's account differs from this in many particulars. He testifies: "I rented the

premises from the owner. I was informed that Mr. Vette had a chattel mortgage on the fixtures. Martin, the tenant before me, offered to let me have possession, if I would pay the chattel mortgage. I went then to Vette's office. * * * As I had one hundred dollars I asked Vette if he would give me more time, if I paid him that much on account of the mortgage. He assured me that he would, and I thereupon paid him that sum. Going down stairs, I met Mr. Merrill, the plaintiff's secretary, and informed him of what I had done, and he went up to see Vette, but I went on down to the saloon. * * * I never knew till long afterwards that the bill of sale had been made out to the plaintiff, or that any bill of sale existed. I put up my sign and took possession for myself. I always thought that Vette made the transaction with me, and gave me possession because I gave him the one hundred dollars. Merrill told me that he paid three hundred dollars, but I told him that I did not care what he did; that I had managed the affair, and had possession. The plaintiff has never offered to pay me back my one hundred dollars." The witness acknowledged that he had received one hundred and fifty dollars from the plaintiff, to be used in paying the first month's rent, and that he had not paid the amount. back. It further appeared, from the testimony, that the defendant, Niederweiser, had given a deed of trust on the property in dispute, to secure the defendant, Uhlenhuth, on an indebtedness, of which about eight hundred dollars yet remained due, and that Niederweiser was now in possession of the chattels as bailee of Uhlenhuth's trustee.

It is insisted for the defendants that the title to the chattels became vested in Niederweiser by his payment of the one hundred dollars to Vette, and his taking immediate possession of the property as owner, by virtue of his purchase from Vette; and that his title, so acquired, could not afterwards be divested by the plaintiff's payment of the balance due on the purchase price, and the taking of the bill of sale. This result might easily

follow, if the testimony given by Niederweiser were to be taken alone, as the only true account of the transactions as they occurred. But such a result would be wholly irreconcilable with the state of facts sworn to by the witness, Schnaider. According to his testimony, it was the understanding of all parties that the plaintiff was the real purchaser, and that Niederweiser's payment of one hundred dollars was made on the plaintiff's account; Niederweiser being, from the beginning of his possession, merely a bailee of the plaintiff. In this connection, therefore, the controversy turns wholly on the question of fact.

No instructions were given or refused on either side. Every presumption must, therefore, be in favor of a correct application of the law, by the trial court, to the facts which it found to be satisfactorily proved. Conversely, it is to be presumed that the court's finding upon the issues of fact was such as would legitimately lead to the judgment rendered. From these considerations we reach the conclusion that the court found the facts to have been as testified to in behalf of the plaintiff, and not as they were presented for the defendants. There was substantial testimony in support of this finding, and a rule, too familiar to be repeated here, precludes all inquiry into its correctness, or into the weight of the testimony by which it is either sustained or assailed. It follows that we can not sustain the point made for the defendants, because we do not find in this record the elements of fact which would be essential to that effect.

An ice-box was one of the articles mentioned in the petition, the replevin bond, and the bond given by the defendants for the retention of the property. The defendants offered to prove that this article was not in the saloon at the time of the levy, but was then and previously, and had ever since been, in the possession of the plaintiff. Upon the plaintiff's objection, the court excluded this testimony, on the ground that the defendants could not be permitted to contradict, by oral testimony,

the sheriff's official return and their own recitals and allegations in the bond given by them. This ruling is assigned for error. We can not perceive that the court erred in its ruling. The grounds upon which it was based are sustained by an unbroken line of authority. No attempt was made to lay a foundation for the admission of the testimony, by a showing of fraud, mistake, etc. *Hundley v. Filbert*, 73 Mo. 34; *The State ex rel. v. Williams*, 77 Mo. 463; Drake on Attachments, sec. 339.

The court, in its judgment, assessed the value of the property at three hundred dollars. We find in the record no evidence in support of this valuation. The only witness who testified on the subject placed the valuation of all the property in dispute at from one hundred to one hundred and twenty-five dollars. A memorandum made by the learned judge who tried the case, and inserted in the record, intimates that the estimate was reached by taking into consideration the Vette and Martin sale for four hundred dollars, the bond given by the defendants on the basis of a valuation of three hundred dollars, and the fact that Uhlenhuth loaned upon the property a much larger sum. But these matters furnish no legal *criteria* of value, for any purpose. The sale by Vette and Martin was a mere private transaction, and carried with it the possession of the saloon in which the fixtures were to be used. The bond given by the defendants neither recited nor admitted any value, and the security taken by Uhlenhuth for his loan to Niederweiser covered the leasehold and other property of unknown value, besides what is here in controversy. No finding of value, or of an amount of damages, can be sustained, when not based upon legal evidence. *Ascher v. Schaefer*, 25 Mo. App. 1; *Anchor Milling Co. v. Walsh*, 24 Mo. App. 97.

If the plaintiff will, within ten days after the filing of this opinion, remit all of his recovery (excluding costs) in the circuit court, excepting the sum of one

hundred and twenty-five dollars, and the damages recovered, the judgment will be affirmed. Otherwise, it will be reversed and the cause remanded. All the judges concur.