## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

MARCH TERM, 1909.

---

*(Continued from Volume 136)*

---

THE STATE OF MISSOURI ex rel. FIRST NA-
TIONAL BANK OF FRESNO, Defendant in Error,
v. SEAVEY & FLARSHEIM et al., Plaintiffs in
Error.

Kansas City Court of Appeals, May 3, 1909.

1. **ATTACHMENT: Bond: Damages: Interest: Contract: Instruc-
tion.** In an action on an attachment bond for damages re-
sulting from the wrongful attachment of certain moneys, re-
lator is entitled to recover interest on the money so detained
at six per cent from the time of such detention; and section
2869, Revised Statutes of 1899, does not apply since the action
is *ex contractu*, and an instruction is approved.

2. ———: ———: **Evidence: Attorneys' Fee: Expert.** In an ac-
tion on an attachment bond to recover damages for wrongful
attachment, lawyers may testify as experts as to the value
of services if they are acquainted with the value thereof, at
the time and place where rendered. A Kansas City lawyer
cannot testify as to the value of services in taking depositions
at Fresno, California, unless he qualifies as to the knowledge
of the value of such services at the time they were rendered
at Fresno.

137 App.—1　　　　(1)

On Motion for Rehearing.

3. ———: ———: ———: ———: Remittitur. *Held,* a remittitur of $100 cures the error of admitting testimony as to the value of an attorney's services in taking depositions at Fresno.

Error to the Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Karnes, New & Krauthoff,* for plaintiff in error, filed argument.

*Adrian F. Sherman* and *Ashley, Gilbert & Dunn* for defendant in error.

(1) The rule in suits for conversion of property that allowance of interest is discretionary with the jury has no application to actions on attachment bonds on account of the detention of an interpleader's money by the attachment proceedings, in which case interest is the proper measure of damages. Padley v. Catterlin, 64 Mo. App. 647; Goodman v. Railway, 71 Mo. App. 464; York v. Bank, 105 Mo. App. 139.

JOHNSON, J.—Action brought by an interpleader on an attachment bond to recover damages sustained in consequence of the wrongful levy of the writ of attachment on his property. A trial had on December 13, 1906, resulted in a verdict and judgment for plaintiff in the sum of $806.31, and the cause is here on writ of error sued out by defendants.

In 1902, the Minnewawa Home Packing Company, a partnership doing business in California, sold a quantity of raisins to defendants, Seavey & Flarsheim, a partnership in business at Kansas City for the price of $1,134.25. At about the same time, the Packing Company sold similar merchandise to Nave-McCord Mercantile Company of St. Joseph for $1,403.63. The ship-

ments were made from California, billed respectively to Seavey & Flarsheim and Nave-McCord Mercantile Company. In each case a draft was drawn by the vendor on the vendee for the purchase price and attached to the bill of lading. These drafts were purchased of the Packing Company by plaintiff, a bank at Fresno, California, before the shipments arrived at their destinations. Plaintiff forwarded the drafts for collection and that drawn on the Nave-McCord Mercantile Company was paid to the collection agent at St. Joseph, viz., the National Bank of St. Joseph. The draft drawn on Seavey & Flarsheim was not paid for the reason that the drawees claimed that the Packing Company was indebted to them in the approximate sum of $2,000, on account of damages resulting from a breach on the part of the Packing Company of a contract to deliver other merchandise sold to the drawees. On October 20, 1902, about the time of the arrival in Kansas City of the raisins shipped to Seavey & Flarsheim, that firm brought an attachment suit in the circuit court of Jackson county against the Packing Company to recover their damages. The ground of attachment alleged was the non-residence of the defendants. An attachment bond in the sum of $4,000, conditioned as required by law, was executed and filed and writs were issued to the sheriffs of Jackson and Buchanan counties. The raisins shipped to Seavey & Flarsheim were seized by the sheriff of Jackson county and afterward sold under order of court for $1,134.25. Before the writ reached the sheriff of Buchanan county, Nave-McCord Mercantile Company brought an attachment suit in the circuit court of that county against the Packing Company on a demand of $625, and caused the National Bank of St. Joseph to be summoned as garnishee. This was done after Nave-McCord Mercantile Company had paid the draft sent by plaintiff to the St. Joseph bank for collection and while the proceeds were still in the hands of that bank. Afterward, on October 27, 1906, the sheriff of Buchanan county summoned the

St. Joseph bank as garnishee in the suit of Seavey & Flarsheim. Interrogatories were filed and answered by the St. Joseph bank and plaintiff interpleaded, claiming to be the owner of the proceeds of both shipments by virtue of its purchase of the drafts with bills of lading attached. A trial of the issues raised by the interplea resulted in a victory for the interpleader, and it was adjudged that plaintiff was the owner of the proceeds of both shipments. After the termination of that suit, and after the lapse of two and a fourth years from the levy of the attachment writs, plaintiff received the proceeds of the shipments and brought the present suit on October 24, 1906. The damages alleged in the petition are as follows:

"And relator further says that it was damaged by said attachment in the sum of three hundred and forty-two dollars and sixty-one cents ($342.61), by reason of being deprived of the use of its property and funds of the aggregate amount and value of twenty-five hundred and thirty-seven dollars and eighty-eight cents ($2,537.88) for two and one-quarter years because of the levy and garnishment aforesaid, being interest on said amount at six (6) per cent per annum for said period during which said funds were impounded by said proceedings of defendants Seavey & Flarsheim; and in the further sum of seven hundred and seventy-six dollars and twenty cents ($776.20), which it was compelled to and did lay out and expend in and about the prosecution of its said interplea, for attorneys' fees in the sum of seven hundred and fifty ($750) dollars; and expenses to the amount of twenty-six dollars and twenty cents (($26.20), being twenty-one dollars and ninety-five cents ($21.95) traveling expenses of four trips by relator's attorney from Kansas City, Missouri, to St. Joseph, Missouri, to obtain settlement and payment over of the said fund impounded by the garnishment of the National Bank of St. Joseph, Missouri, issued in said attachment suit, as heretofore set out, and three dollars and twenty-

five cents ($3.25), expenses of telegrams between relator in Fresno, California, and its attorneys in Kansas City, Missouri, concerning said attachment and garnishment, and one ($1) expense of obtaining certified copy of judgment of the court ordering said garnishee National Bank of St. Joseph to pay said garnished fund to the clerk of the circuit court of Jackson county, Missouri, for the use of relator, upon the dismissal of defendants, Seavey & Flarsheim's appeal by the Kansas City Court of Appeals, for exhibition of said copy to garnishee in order to obtain payment of said garnished fund. That said damages and expenses amounted in all to eleven hundred and eighteen dollars and eighty-one cents ($1,118.81), and said expenses were necessary and reasonable and incurred and expended by relator in obtaining the release of its property so impounded as aforesaid." The answer is a general denial.

At the request of plaintiff, the court instructed the jury:

"The court instructs the jury that the relator, First National Bank of Fresno, California, is suing in this action for $1,118.81, in which sum it claims to have been damaged by reason of the attachment of its property by the defendants, Seavey & Flarsheim, as follows:

"2-1 4 years' interest at 6 per cent on
$1,134.25 proceeds of goods attached $153 12
2-1 4 years' interest at 6 per cent on
$1,403.63 funds garnished ........ 189 49
Attorneys' fees in obtaining release of
its said property ................ 750 00
Attorneys' traveling expenses to St.
Joseph, Mo. ........ ............ 21 95
Expenses of telegrams ............. 3 25
Cost of copy of judgment ......... 1 00
                                   ———————
                                   $1,118 81"

In computing relator's damages, you are instructed that the relator is entitled to recover six per cent per annum upon the amount or value of its property for the length of time the attachment of same by defendants deprived them of its use, and such of the expenses claimed to have been incurred as you may find under the evidence to have been necessarily or reasonably expended by said relator in and about the recovery of its property and money attached by the defendants, Seavey & Flarsheim."

(2)   "The court instructs the jury to find its verdict for the relator, First National Bank of Fresno, California, and against the defendants, for the items of six per cent interest per annum on $1,134.25 for 2 1-4 years and for $26.20 traveling expenses, and for six per cent interest per annum from October 27, 1902, to January 27, 1905, on $1,403.63, less the interest on $625 from October 27, 1902, to June 15, 1904; and for such reasonable attorneys' fees as you may find from the evidence said First National Bank of Fresno, California, did incur or expend in recovering the property attached and money garnished by the defendants, Seavey & Flarsheim, not exceeding $1,118.81 in all."

First, it is argued by defendants that the court erred in peremptorily directing the jury to allow plaintiff interest at six per cent per annum on the money impounded "for the length of time the attachment of same by defendants deprived them of its use." It is contended that since this is an action for "the inquisition of damages" the jury should have been left to the exercise of its discretion in the determination of the question of whether interest on the money during the period of its detention in the attachment suit should be included in the estimate of plaintiff's damages. Section 2869, Revised Statutes 1899, is invoked in support of that position. It provides: "The jury on the trial of any issue, or on any inquisition of damages, may, if they shall think fit, give damages, in the nature of interest, over and above

the value of the goods at the time of the conversion or seizure." Should we find that this section has application in a suit on an attachment bond, we must conclude that the objection to the peremptory nature of the instructions is well founded.

Speaking of this statute, the Supreme Court said in State ex rel. v. Hope, 121 Mo. 34: "That its purpose was to fix some definite manner by which it may be determined whether or not interest, over and above the value of the goods taken in actions for seizures and conversions, should be determined, seems clear. By its terms it provides that the jury may, if they shall think fit, give damages, in the nature of interest, leaving it entirely in their discretion to do so or not, as they may think their duty demands, under the facts and circumstances in proof; yet the instruction deprives them of any discretion in regard to the matter and tells them that if they find for plaintiff they will assess his damages at the value of the property taken with interest at the rate of six per cent per annum from the time of bringing this suit.

"Whatever the rule may have been in the absence of any statutory enactment, there is now no room for doubt. Language could not be plainer. The manifest intention of the Legislature by this statute was, that in this class of cases the question of interest as damages should be for the jury and not for the court. This instruction ought not to have been given."

And in Carson v. Smith, 133 Mo. l. c. 615: "As a general rule, in actions for conversions, in order to give the injured party full indemnity, interest is allowed on the value of the property from the date of its conversion (Watson v. Harmon, 85 Mo. 443; 1 Sutherland on Damages (2 Ed.), sec. 355, and authorities cited), but in this State, by whose laws that question ought to be governed in this case, it is entirely within the discretion of the jury as to whether interest will be allowed on the value of the property or not. [R. S. 1889, sec. 4430;

State ex rel. v. Hope, 121 Mo. 34.] 'Where interest is allowed, not under contract, but as damages, the rate is according to the laws of the place where the suit is brought.' [11 Am. and Eng. Ency. of Law, 421; Shickle v. Watts, 94 Mo. 410; Clark v. Child, 136 Mass. 134; Goddard v. Foster, 17 Wall. 123.]" Other decisions to the same effect are: Hawkins v. Kansas City, etc., Co., 63 Mo. App. 64; Eagle Const. Co. v. Railroad, 71 Mo. App. 630; Wheeler v. McDonald, 77 Mo. App. 213; Meyer v. Insurance Co., 95 Mo. App. 721; Bigler v. Leonori, 103 Mo. App. 131; Feller v. McKillip, 109 Mo. App. 61.

If this were an action *ex delicto,* such as replevin, conversion, or the like, a mere reference to the above authorities would end all discussion of the subject, but it appears that none of the cases cited was a suit on an attachment bond, and we are confronted with the proposition that neither they nor the statute they discuss have any decisive relation to an action of that character.

In State to use v. Beldsmeier, 56 Mo. 226, the suit was on an attachment bond for the recovery of damages. Referring to the measure of damages, the Supreme Court said, through Judge SHERWOOD: "I am satisfied that he was entitled to recover on the bond for any direct loss, damage or expense produced or occasioned 'by reason of the attachment, or any process or proceeding in the suit, or by reason of any judgment or process thereon;' and that this language is sufficiently comprehensive to include all the damages for which this suit is brought, not excepting the alleged injury sustained by relator in the loss of the use of his money, which, as a matter of course, cannot exceed the legal rate of interest on the sum detained." We cannot construe this language otherwise than as meaning that the relator was entitled to the recovery of interest as a matter of right, and not at the discretion of the jury. State to use v. McHale, 16 Mo. App. 478, was another action on an attachment bond. The St. Louis Court of Appeals conceded, in effect, that

interest at the legal rate should be allowed as a matter of right.   In a similar action, this court held in State ex rel. v. Gage, 52 Mo. App. 464: "That the measure of damages in such cases is the value of the goods at the time of the seizure with interest at the rate of six per cent to the time of trial."   In State to use v. McKeon, 25 Mo. App. 667, the St. Louis Court of Appeals, after an exhaustive review of the authorities concluded that "the rule of damages in cases of trespass and trover is not necessarily the governing rule in actions on attachment bonds, where there has been a temporary detention and restoration of the property levied upon."

Thus it will be seen that the Supreme Court and both Courts of Appeals have held that in suits of this character, interest is recoverable as a matter of right. Necessarily the rule must rest on the idea that an action on an attachment bond is *ex contractu* and not *ex delicto,* though it requires the commission of a tort to constitute a breach of the contract.   The provisions of section 2869, supra, do not apply to actions on contract (Padley v. Catterlin, 64 Mo. App. 1. c. 647; Goodman v. Railway, 71 Mo. App. 460; York v. Bank, 105 Mo. App. 127), and, therefore, do not affect the question of the measure of damages in the present case.   Since the property attached was money and was detained only temporarily from plaintiff, the only damages plaintiff could have suffered in addition to attorneys' fees and expenses was the loss of the use of the money during the time it was detained.   Such damage the law holds is measured by the legal rate of interest.   Plaintiff was entitled in law to such interest, and the court was right in so instructing the jury.

Several other propositions are argued by counsel for defendants for a reversal of the judgment, all of which we find are devoid of merit, with one exception. Plaintiff claimed in the petition compensation for outlay on account of attorneys' fees, in the sum 'of $750, and the verdict of the jury shows quite clearly that an

allowance of approximately $500 was made on this account. Lawyers in Kansas City appeared for plaintiff as interpleader in the attachment suit, but a large part of the evidence introduced on behalf of the interpleader consisted of depositions taken in Fresno, California. The interpleader was represented at Fresno by a local attorney and, in the demand of $750 for attorneys' fees was included a fee of $100 for the services of this attorney. There was no evidence offered by plaintiff to show the reasonable value of such services. Kansas City lawyers were called as expert witnesses by plaintiff to testify to the value of all the services rendered in the case by the attorneys of the interpleader and in the hypothetical question propounded by counsel for plaintiff to these witnesses, the value of the services in "taking depositions four times in California to prove interpleader's case, plaintiffs appearing and cross-examining interpleader's witnesses," was included. One objection to the question interposed by defendant was that it "calls for the value of services rendered in taking depositions in California when the witness has not qualified to show what was the reasonable value of legal services in California." The objection was overruled. We think it should have been sustained and as there was an entire failure of proof on the issue of what the services in Fresno were reasonably worth, the jury should not have been permitted, as they were, to take those services into consideration. Certainly, a Missouri jury could not have any knowledge of its own on the subject of the value of professional services rendered by an attorney in Fresno, California. The burden was on plaintiff to prove the value of such services by evidence. Attorneys are competent witnesses to the value of the services of an attorney when they appear to possess knowledge of the usual compensation paid for such services at the time when and the place where they were rendered. None of the Kansas City attorneys examined by plaintiff disclosed any knowledge of the value of an

attorney's services at Fresno in the taking of depositions. The compensation usually paid lawyers varies so much that what would be a reasonable charge in one place cannot be regarded as a criterion for what would be reasonable for the same service in another place. Lawyers in charging fees are governed not only by the length of time consumed by their services, the amount in controversy and the importance and difficulty of the issues involved, but also by the cost of living and the expense of maintaining a suitable office and office force. Consequently, it is a matter of common knowledge that attorney's fees are higher in some States than in others and in the same State are much higher in large cities than in small towns. Frequently there is a marked difference in this respect between cities or towns of equal size and importance.

The opinion entertained by a Kansas City lawyer of the reasonable value of a lawyer's service in Fresno, California, might and probably would be materially different from the compensation usually paid in Fresno. Doubtless, each of the expert witnesses had found it necessary in his practice to employ attorneys in other places to take depositions for him. If he had, he knew that he had paid more to the New York than to the St. Louis lawyer, and more to the lawyer in St. Joseph than to one in Rockport, Missouri. How then could the different amounts he had paid in New York, St. Louis, St. Joseph and Rockport give him accurate knowledge of the prevailing rates of compensation in San Francisco, Minneapolis, Portland, Maine, or Ness City, Kansas? The hypothetical question vaguely refers to services rendered in California. It would have been about as definite had it referred to services rendered in the United States. We apprehend there is as wide a difference in attorney's fees between San Francisco and Fresno as between St. Louis and Sedalia. The expert witnesses in estimating the value of the services of the Fresno attorney must have done just what the jury did—guessed at it. This is

not permissible, and a judgment based in whole or in part on speculation or guesswork should not be permitted to stand. For this error, the judgment is reversed and the cause remanded. All concur.

## ON MOTION FOR REHEARING.

JOHNSON; J.—Respondent in its motion for rehearing offers to remit the full amount of the fees for taking depositions in Fresno and asks that the order reversing and remanding the cause be set aside.

We think a proper remittitur would cure the error and, accordingly, the order made is set aside and the judgment is affirmed on condition that within ten days the respondent shall file with the clerk of this court a remittitur of $100.