STATE OF MISSOURI, EX REL. WILLIE CARSON JOHNSON AND W. G. JOHNSON, DEFENDANTS IN ERROR, v. B. F. WEINBERG AND AMERICAN SURETY COMPANY OF NEW YORK, PLAINTIFFS IN ERROR.— 151 S. W. (2d) 134.

Kansas City Court of Appeals. April 7, 1941.

*Henderson, Deacy, Henderson & Swofford* and *Joseph Koralchik* for plaintiffs in error.

*C. H. Ewald* and *Ewing, Ewing & Ewing* for defendants in error.

1276

BLAND, J.—This is a suit on a bond given in an attachment suit. The case was tried before the court, without the aid of a jury, resulting in a judgment in favor of plaintiffs below in the sum of $997.15, and for defendant, Weinberg, in the sum of $50 upon a counterclaim filed by him. The case has been brought here, by the defendants in the court below, by a writ of error.

The facts show that, on June 26, 1937, B. F. Weinberg, the principal in the bond sued upon, instituted a suit in the Circuit Court of Jackson County, Missouri, against the relators herein, for the recovery of a commission for the alleged securing of a tenant by him for the defendants' hotel. In said suit, he prayed judgment in

the sum of $1467. Appended to the original petition was an affidavit for attachment, wherein it was stated that defendants therein, relators here, were non-residents of the State of Missouri. Upon this petition a writ of attachment was issued and, on June 26, 1937, the Milner Hotels, Inc., was summoned as garnishee.

The writ was returnable September 13, 1937. On August 13, 1937, the defendants in that suit, relators herein, entered their appearance, and filed an answer. They also filed a motion to dissolve the attachment because no bond had been filed.

On August 18, 1937, the motion to dissolve the attachment was sustained conditionally, the condition being that if plaintiff should file an attachment bond within five days the attachment should remain in force.

On August 19, 1937, Weinberg filed an attachment bond, which bond is the one sued upon in the instant case. This bond was in the sum of $3000 and was signed by Weinberg, as principal, and the American Surety Company of New York, as surety.

Thereafter, the Johnsons, who were defendants in the attachment suit, filed in said suit, a bond in the sum of $3000 designated as a ''Forthcoming Bond.'' This bond was dated September 9, 1937, and recited that the principal and the surety therein acknowledged themselves to be indebted to the Sheriff of Jackson County, his successors or their assigns, in the sum of $3000; that the sheriff ''has levied upon and seized as the property of the above named defendants, the personal property described in the schedule hereto attached, marked Exhibit 'A' and made a part of this bond, said property at the time of said levy and seizure being in the hands of Milner Hotels, Incorporated, garnishee and said Willie Carson Johnson and W. G. Johnson desiring to retain or regain the possession thereof.

''Now, therefore, if the said Willie Carson Johnson and W. G. Johnson shall have said certain personal property described in the schedule hereto attached, marked Exhibit 'A' and made a part of this bond, forthcoming when and where the Court shall direct, and shall abide the judgment of this Court, then this bond shall be void, otherwise to remain in full force and effect.''

The bond was filed with the sheriff. Thereafter, the funds of the defendants, garnished in the hands of the Milner Hotels, Incorporated, were released by the sheriff on October 1, 1937. The return of the sheriff shows that the garnishment was released on September 9, 1937. The answer of the garnishee states that on September 9, 1937, it was advised by the sheriff that the attachment had been released from the garnishment and it would not be required to answer the summons and garnishment in any way whatsoever, and that it, thereafter, paid over to defendants all funds due them at the time of the release and subsequent thereto. This answer was filed about February 17, 1938. However, it was stipulated between the parties, at the

trial of the present suit, that the funds were not actually released by the sheriff under the bond until October 1, 1937.

At the time of the garnishment the garnishee did not have any money, property or effects on hand of the defendants and was not indebted to the defendants in any manner whatsoever. However, the garnishee withheld payments of monthly rents due from it to the Johnsons at the rate of $300 per month from June 29, 1937 to September 9, 1937, or a total of $975. No other property or money was attached under the writ in that case.

The Johnsons employed as their attorney, the Honorable Lee B. Ewing, of the Vernon County Bar, who represented them in the case from the outset. He was assisted by a Kansas City attorney. Depositions were taken in Knoxville, Tennessee, and Detroit, Michigan.

The case was tried on February 25, 1937, and a verdict was rendered for the Johnsons upon which judgment for them was entered. Weinberg appealed to this court. The appeal was dismissed on April 18, 1938, for failure to comply with the rules of court. The present suit was instituted on August 25, 1939.

The items of damage alleged to have occurred to the Johnsons, as a result of the giving of the attachment bond by Weinberg, were the fees and expenses of the two attorneys mentioned, totalling $514.09, attorneys and notary fees, in the taking of depositions, in the sum of $135.85, premium paid for the forthcoming or delivery bond $60, traveling expenses of the Johnsons to and from Kansas City from their home in Welfare, Texas, $160, loss of time to the Johnsons, in attending the trial $80, and interest on the money attached in the hands of the Milner Hotels, Incorporated $13.95. The total amount prayed for was $1039.89.

The judgment includes interest accruing after the date of the former judgment on the amount that the court found recoverable. The defendants herein have filed in this court a *remittitur* of the interest accruing from February 25, 1938 to August 26, 1939, the latter being the date upon which the present suit was begun.

Defendants insist that the judgment was erroneous for the reason that plaintiffs herein are not entitled to recover for the expenses incurred in the defense of the former suit on the merits or "after the garnishment was dissolved and the garnishee discharged," and that all but the sum of $126.87 of the amount of the damages allowed by the court was for expenses incurred after that time.

In support of this contention defendants cite State to the use of Russell v. Fargo et al., 151 Mo. 280, and other cases. We have examined all of them and find them not in point. In the case of State to the use of Russell v. Fargo the bond given was a dissolution bond and not a forthcoming or delivery bond, as in this case. The bond there was given under the provisions of what is now section 1485, Revised Statutes 1939, providing that attachments may be dissolved on

motion made in behalf of defendant at any time before final judgment, upon certain conditions, including the giving of a bond to the plaintiff in the action.

The section following, 1487 Revised Statutes 1939, provides that: "When any attachment shall be dissolved, all proceedings touching the property and effects attached, and the garnishee summoned, shall be vacated, and the suit shall proceed as if it had commenced by summons only."

The forthcoming bond in the case at bar was not given under this section but under section 1461, Revised Statutes 1939, reading as follows:

"When property of the defendant found in his possession or in the hands of any other person shall be attached, the defendant, or such other person, may retain or regain the possession thereof at any time before final judgment or sale of such property under the order of court, by giving bond and security to the satisfaction of the officer executing the writ, or other proper officer, to the sheriff, his successor or their assigns, in double the value of the property attached, conditioned that the same shall be forthcoming when and where the court shall direct, and shall abide the judgment of the court."

Section 1485 provides for a dissolution and section 1461 a forthcoming or redelivery bond. The two are different in character. "A bond conditioned for the forthcoming or delivery of the property to satisfy any judgment that may be rendered does not affect or discharge the attachment, or withdraw the property from the custody of the law so as to destroy the lien of the attachment, but the lien is preserved as if the property remained in the care of the officer. The bond serves merely to insure the safe-keeping and faithful return of the property, and substitutes the responsibility of the obligors in this respect for that of the officer. Although after the execution of such bond, the court cannot appoint a receiver to take charge of and sell the property.

"Dissolution Bond. A bond under the statute for the discharge of an attachment, not merely to have the property forthcoming, but conditioned to perform the judgment which may be rendered, dissolves the attachment and discharges the property from the custody of the law." [6 C. J., pp. 335, 336. See, also, Haber v. Klauberg, 3 Mo. App. 342; Evans v. King, 7 Mo. 411; Jones to the use, etc. v. Jones et al., 38 Mo. 429; Hudson v. Lamar, 74 Mo. App. 238; Simmons Hdw. Co. v. Loewen Bros., 95 Mo. App. 122, 125; Lebeaume v. Sweeney, 21 Mo. 166; Wise v. Zinc & Lead Co., 157 Mo. App. 315; Fleming v. Clark, 22 Mo. App. 218; McDowell & Co. v. Morgan, 33 Mo. 555.] In State v. Yount, 186 Mo. App. 258, 263, it is stated that an attachment suit may be defeated in two ways: One by a plea in abatement, (there was no such plea filed in the former case), and the other by judgment on the merits. There being no plea in abatement it re-

quired a judgment on the merits in the former suit to dissolve the attachment. Therefore, the principal and the sureties on the attachment bond are liable for the expenses incurred and expended in defending the suit on the merits. [State v. Yount, *supra*.]

It is claimed by the defendants that the parties treated the attachment as having been dissolved by the giving of the forthcoming or redelivery bond. We find no conclusive evidence, if any, of this in the record.

However, defendants contend that there is no competent evidence to support the allowance of notary fees of $12.45 paid the notary in connection with the taking of the depositions in Knoxville, Tennessee, $36.40 allowed for such fees in connection with the taking of depositions in Detroit, Michigan, $50 paid by the Johnsons to Herman Sable, attorney of Detroit, Michigan, for taking the deposition at that place, and $35 paid Lee, Cox & Hier, attorneys of Knoxville, Tennessee, for taking depositions there.

Mr. Ewing, over the objection of the defendants, testified as to the reasonableness of these fees, but defendants insist that he was not a competent witness on the subject. Mr. Ewing testified that he had taken depositions in Memphis and Nashville, Tennessee, and that the charges of attorneys for taking depositions in those cities were the same as charged for the taking of depositions in the rest of the State, in accordance with his experience. Under the circumstances, we think that the witness was qualified to express an opinion on the subject and that the charge of $35, attorneys fees paid Lee, Cox & Hier, and $12.45 paid the notary for taking the depositions in Knoxville, Tennessee, were properly allowed. The court could have inferred that Mr. Ewing knew of the charges of notaries in Tennessee, in connection with the taking of depositions, in view of the fact that the latter had taken depositions there.

As to the fee of $50 paid Mr. Sable, for taking the depositions in Detroit, Michigan, the record disclosed that Mr. Ewing had had no experience with reference to such charges in Detroit and, therefore, the charge was not supported by his testimony.

However, the evidence shows that when the former case was set for trial, on February 24, 1938, plaintiffs could not safely proceed to trial without the deposition of one Milner, who was, at the time, in the city of Detroit, and plaintiffs desired a continuance of the case in order to take his deposition. Mr. Weinberg's attorney would not agree to a continuance unless the Johnsons would pay Weinberg's expenses to Detroit and the fee of his attorney at Detroit for representing him there in the taking of the deposition. This fee was $50. It appears that this $50 was not paid and Weinberg, in the present suit, filed a counterclaim covering that amount which, as before stated, was allowed by the trial court. The parties having agreed that $80 was a reasonable attorney's fee to be paid Weinberg's at-

torney for taking the deposition, they are hardly in a position to urge that a like fee was not a reasonable one to pay the attorneys for the Johnsons for like services in connection with the same matter.

However, there was no evidence of statutory allowances, if any, to notaries in the State of Michigan for the taking of depositions there and no competent evidence as to the reasonableness of the charge of $36.40 paid to the notary for taking the depositions there. [Biglow v. Carney & Hart, 18 Mo. App. 534; State ex rel. v. Seavey & Flarsheim, 137 Mo. App. 1.]

It is insisted that there is no competent evidence to support the allowance, by the court, of $50 to plaintiffs for the loss of their time in making the trip from Welfare, Texas, to Kansas City and return to attend the former trial. In this connection the evidence is undisputed that Mr. Johnson earned as much during the month in which he made the trip as he did in the months following, when he returned to work and worked untinterruptedly.

Mr. Johnson testified that he was selling rock-wool insulation for the Johns-Manville Company on a commission basis; that he lost ten days from his work by reason of having to come to Kansas City to attend the trial; that he had just started to work for the Johns-Manville Company and that he did better the first month at his work than afterwards and that, consequently, he was able to average as much in that month as he did in subsequent months. This evidence tends to show that he lost something in the way of commissions during the ten days he was compelled to be away from his home. He testified that he averaged $6 per day when he worked. Under all of the circumstances, it was within the province of the court to allow him $50 for the ten day period he was necessarily away from his work. [Brokerage Co. v. Campbell, 164 Mo. App. 8; City of Kennett v. Katz Constr. Co., 202 S. W. 558, 562; Couch v. K. C. So. Ry. Co., 252 Mo. 34, 37; The Huse and Loomis Ice & Trans. Co. v. Heinze. 102 Mo. 245; McDaniel v. United Rys., 165 Mo. App. 678, 698; Young v. Tilley, 190 S. W. 95.] "The rule against the recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent. In other words, the rule against uncertain or contingent damages applies only to such damages as are not the certain results of the breach, and not to such as are the certain results but uncertain in amount." [17 C. J., p. 756.] "While the actual amount of damages from the breach of a contract may not be susceptible of exact proof, the law does not permit one whose act has resulted in loss to another to escape liability on this account. The manner of measuring the damages having been ascertained, impossibilities in proving same are not required, but only that the best evidence be adduced of which the nature of the case is capable; in other words, the degree of certainty of the proof is dependent upon the character of the proceeding." [City of Kennett v. Katz Const. Co., et al., *supra*.] It is only necessary for the plaintiffs in

proving their damages, to give the best evidence which the nature of the case admits. [Huse and Loomis Ice and Trans. Co. v. Heinze, *supra*; Young v. Tilley, *supra*.]

However, it appears that the court allowed plaintiffs the sum of $71.20 for expenses in the operation of Mr. Johnson's automobile in making the trip from Welfare, Texas, to Kansas City and return. Mr. Johnson testified that he kept no account of the amount he expended for gasoline and oil. There is no evidence as to the reasonableness of his expenses in connection with the trip. Consequently, we think he was not entitled to recover for this item.

The *remittitur* already made by the plaintiffs will reduce the judgment to $900 as of August 25, 1939, the date the present suit was filed. We think a further *remittitur* should be required of $36.40, covering the amount paid to the notary in connection with the taking of the depositions in Detroit, Michigan, and $71.20, covering the expenses of Mr. Johnson made in connection with driving his automobile to Kansas City from Welfare, Texas, and return, or an additional total of $107.60.

Unless plaintiff, within ten days, will file a *remittitur* in this court of the said last-mentioned sum of $107.60, the judgment will be reversed and the cause remanded. Otherwise, it will be affirmed. All concur.