GRANDVIEW BANK & TRUST COMPANY, Plaintiff-Respondent,

v.

MIDWEST PLASTERING, INC., Joseph L. Holt, Dixie L. Holt, and Michael J. Holt, Defendants-Appellants.

No. WD 32003.

Missouri Court of Appeals, Western District.

April 27, 1982.

4. See 26 U.S.C.A. §§ 5841–5845 and 18 U.S.C.A. §§ 921–924 concerning sawed-off shot-guns.

Faltico, Simons & Associates, Kansas City, for defendants-appellants.

Carl E. Laurent, P. C., Scott King, Independence, for plaintiff-respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Only the individual defendants appeal. The case was submitted to the jury against the individuals on the plaintiff's claim under a written guaranty executed by the defendants, Joseph, Dixie, and Michael Holt. The jury verdict was in favor of plaintiff in the amount of $25,688.60. Directed verdicts against the corporation on the underlying note and against Joseph Holt on a separate individual note are not issues on this appeal.

The individual defendants assert that the jury instructions improperly required the jury to find against all the defendants jointly and improperly directed the jury to find against the defendants in the specific amount of $25,688.60. This latter issue requires reversal.

Grandview Bank made three loans in the amount of $20,000 to Midwest Plastering, Inc., from 1975 to 1977. The first was made on December 24, 1975. The individual defendants executed a guaranty at that time. That loan was repaid in February, 1977, with funds borrowed from Bannister Bank & Trust Company. Defendant Joseph Holt stated that Bannister Bank had requested that he terminate his business with Grandview Bank. In response to that request, he wrote a letter terminating the guaranties signed by Dixie and Michael Holt and a letter terminating the guaranty which he had signed. A copy of a letter terminating the guaranties of Dixie and Michael Holt, dated January 24, 1977, was introduced into evidence. The record does not reveal why a copy of the letter terminating the guaranty of Joseph Holt was not introduced. Joseph Holt stated that he delivered the two letters to Jerry Zoll, a representative of the Grandview Bank, at the same time that he delivered a list of accounts receivable totaling $316,721 to be used as security for a future loan with the bank. Joseph Holt stated that he delivered the letters on January 24, 1977, but was not sure of the date as the list of accounts receivable was at some point incorporated into a security agreement dated February 1, 1977. The bank at trial claimed to have no record of receiving the letters terminating the guaranties and no such letters in its files. Jerry Zoll was no longer employed by Grandview Bank and did not testify at trial.

Grandview Bank made another loan to the corporation on February 1, 1977, which was secured by the corporation's accounts receivable listed in a security agreement dated February 1, 1977. That loan was repaid February 9, 1977, and the corporation borrowed another $20,000 from plaintiff bank on February 17, 1977, as evidenced by a promissory note of that date. The February 17, 1977, loan was made "per

security agreement dated February 1, 1977 all account recevible [sic]." The record does not reveal what funds were used to repay the February 1, 1977 loan, but it was not repaid with funds from the February 17, 1977, loan. The February 17, 1977, loan is clearly not a renewal of the February 1, 1977 loan. The February 17, 1977, loan remains unpaid and is the basis for plaintiff's claim against the individual defendants on the guaranty agreements.

Joseph, Dixie, and Michael Holt had executed three identical agreements with Grandview on December 24, 1975, which in material part read:

## GUARANTY

Whereas, Mid-West Plastering Inc. (. . . "Borrower"), desires to transact business with and to obtain credit or a continuation of credit from the Grandview Bank and Trust Company,

. . . .

[I]n order to induce the Bank from time to time, in its discretion, to extend or continue credit to the Borrower, the undersigned hereby guarantees, absolutely and unconditionally, to the Bank the payment of all liabilities of the Borrower to the Bank of whatever nature, whether now existing or hereafter incurred, . . . .

. . . .

This guaranty is a continuing guaranty and shall remain in full force and effect irrespective of any interruptions in the business relations of the Borrower with the Bank; provided, however, that the undersigned may by notice in writing, delivered personally to or received by registered mail by, an officer of the Bank at the Bank's office at 12500 South 71 Highway, Grandview, Missouri 64030, terminate this guaranty with respect to all Liabilities of the Borrower incurred or contracted by the Borrower or acquired by the Bank after the date on which such notice is so delivered or received.

The trial court directed a verdict for plaintiff against the defendant Midwest Plastering, Inc., for $20,000 in principal, $4,266.60 in accrued interest, and $1,452 in attorney's fees. The court directed a verdict for plaintiff against the defendant Joseph Holt for $5,000 in principal and $1,057.64 in accrued interest on a separate individual note. There is no appeal from those verdicts.

The court submitted Grandview's claim on the guaranty to the jury with the following damage instruction:

## INSTRUCTION NO. 5

If you find the issues in favor of plaintiff then you must award plaintiff $25,-688.60. (insert amount)

Defendants claim that the instruction, in setting the amount of damages at $25,-688.60, directed the jury to find that plaintiff's "reasonable attorney fees," as provided for in the promissory note, were $1,422.00.[1] The testimony of plaintiff's employee was that defendants owed $20,000.00 principal plus accrued interest of $4,266.60. Defendants assert that the difference between $25,688.60 and $24,266.60 must be for attorney's fees since there was no evidence of other damages.

The burden was on Grandview Bank to prove the reasonableness and necessity of the claimed attorney fees. *State v. American Surety Co. of New York*, 41 S.W.2d 966 (Mo.App.1931); *State v. Flarsheim*, 137 Mo. App. 1, 119 S.W. 17 (1909). The only evidence as to attorney's fees was the testimony of Grandview Bank's attorney that he charged $60 per hour, that he had spent 16.2 hours on the "case," and that he estimated he would spend an additional 8 hours on the day of trial. He did not specify how that time was divided between collecting the monies due on the $20,000 promissory note and on the $5,000 promissory note.

Even "[t]he fact that plaintiff paid an attorney's fee does not prove nor tend to

---

1. This is not a case where the note specified by amount or percentage the obligation for payment of attorney's fees. The note in the instant case specified the maker's obligation as "reasonable attorney's fees."

prove the reasonable necessity for his employment, nor the reasonable value of such services as he may have rendered." *American Surety Co. of New York, supra* at 969. There was not sufficient evidence for the jury to find that plaintiff had incurred reasonable attorney's fees of $1,422 in the collection of the promissory note, and the instruction was erroneous in directing such a finding. The evidence of a party having the burden of proof, even though uncontested, does not entitle the party to a directed verdict. Here, there was insufficient evidence to submit the issue of attorney's fees, let alone direct a verdict on the issue. For error in the damage instruction, the judgment must be reversed.

■ The alternative issue raised by the defendants requires discussion because of the possible retrial of the issues. The individual defendants point out that the principal verdict-directing instruction and the forms of verdict permitted the jury to find only against all defendants. The defendants point out that this did not permit the jury to find in favor of Dixie Holt and Michael Holt if they believed the letter as to those defendants was received by the bank and did not believe that the claimed letter of termination as to Joseph Holt was ever sent or received.

The jury was thus not permitted, under the instructions, to make a finding in accordance with the evidence. If the circumstances were such that none of the defendants were liable unless all were, the instructions would be proper. *Greaves v. Kansas City Junior Orpheum Co.*, 229 Mo.App. 663, 80 S.W.2d 228 (1935); *Daniel v. Phillips Petroleum Co.*, 299 Mo.App. 150, 73 S.W.2d 355 (1934). Under the circumstances of the instant case, however, the jury might properly have found in favor of some or all or none of the individual defendants.

In *Jackson v. Scott County Milling Co.*, 118 S.W.2d 1054 (Mo.App.1938), the instruction to the jury erroneously allowed only a finding against all or none of the three defendants, yet the jury returned a verdict against two defendants and in favor of the third. The court held that the instruction

as given was erroneous and that if the jury had followed the instruction, the case would have been reversed. The judgment was affirmed because the jury verdict disclosed that the jury disregarded the erroneous instruction. The error did not materially affect the merits of the case. *Jackson, supra* at 1057–58. That determination cannot be made in the instant case.

■ Some question is raised as to the effectiveness of the guaranties. "Contracts of guaranty should be interpreted like other types of contracts." *Bruce v. Landmark Central Bank & Trust Co.*, 592 S.W.2d 198 (Mo.App.1979). The three identical guaranties in the instant case state unambiguously that each is a continuing guaranty and may be terminated by the guarantor by giving notice in writing to an officer of the bank. The only issue was whether the guaranty was in existence when the February 17, 1977, promissory note was executed and was for the jury to determine. A contract of guaranty does not require independent consideration unless executed subsequent to the principal contract. *Don L. Tullis & Associates, Inc. v. Gover*, 577 S.W.2d 891, 896 (Mo.App.1979). If the jury believes that the guaranties were not cancelled by a writing delivered to Grandview, the agreements continued to bind the individual defendants and would support a verdict against them.

Judgment reversed with directions to set aside the verdicts against the individual defendants and ordering a new trial on the issue of the liability of the individual defendants on the guaranties.

All concur.